# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31426

United States Court of Appeals
Fifth Circuit

**FILED**
December 11, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

THOMAS WILLIAM MALONE, JR.,

Defendant - Appellant

_____

Cons w/ 15-30011

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DREW T. GREEN,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Louisiana

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Thomas William Malone, Jr. and Drew T. Green pleaded guilty to one count of conspiracy to distribute and possess with the intent to distribute AM-2201, a controlled substance analogue, in violation of 21 U.S.C. §§ 846, 841(b)(1)(c), 813, 802(32)(A). The district court sentenced them both to 117

No. 14-31426

months of imprisonment followed by three years of supervised release.  They appeal their sentences on several different grounds.  We AFFIRM.

I.

Thomas William Malone, Jr. and Drew T. Green were the owners of NutraGenomics Mfg L.L.C.  Prior to March 2011, NutraGenomics distributed JWH-018 throughout the United States.  When new federal and state laws banned this substance, NutraGenomics discontinued its distribution and began selling several new synthetic cannabinoids, one of which was AM-2201.  Malone and Green sold AM-2201 both in bulk and as part of a product called "Mr. Miyagi"—a mixture of AM-2201 and vegetable material that visually resembled marijuana.  Though Mr. Miyagi was, with a wink, labeled as potpourri not fit for human consumption, the expectation was that the user would smoke the product in order to get high off its active ingredient, AM-2201.  Malone and Green brought in Boyd A. Barrow and Joshua Espinoza to manufacture and distribute Mr. Miyagi, both now co-defendants.  They in turn sold a large quantity of Mr. Miyagi to Richard Buswell, who distributed it at stores throughout Louisiana.

On September 4, 2012, a federal grand jury in the Western District of Louisiana returned a superseding indictment charging Malone, Green, and several co-defendants with one count of conspiracy to distribute and possess with the intent to distribute AM-2201, a controlled substance analogue, one count of conspiracy to introduce and cause to be introduced misbranded drugs into interstate commerce, and one count of conspiracy to commit money laundering.  Within about two weeks, Malone and Green had reached plea agreements with the Government in which they agreed to cooperate and plead guilty to the count of conspiracy to distribute AM-2201 in exchange for the dismissal of the remaining counts. They pled guilty to one count of conspiracy to distribute and possess with the intent to distribute a Schedule I Controlled

No. 14-31426

Dangerous Substance, in violation of 21 U.S.C. §§ 846, 841(b)(1)(c), 813, 802(32)(A). As part of their pleas, Malone and Green admitted to distributing not less than 1400 kilograms of AM-2201, and earning not less than $10,000,000 from the conspiracy.

The guilty pleas were accepted, and the probation office prepared presentence reports ("PSRs"). Because AM-2201 is not listed in either the Drug Quantity Table or the Drug Equivalency Tables, the PSRs had to "determine the base offense level using the marihuana equivalency of the most closely related controlled substance" to AM-2201.[1] The Sentencing Guidelines require that three factors guide this inquiry:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
>
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.[2]

Based upon the consideration of these factors, the PSRs determined that Tetrahydrocannabinol, or THC, was the "most closely related controlled substance" to AM-2201. The Drug Equivalency Tables specify a 1 to 167 ratio for converting THC into marijuana; that is, the Sentencing Guidelines treat one gram of THC as equivalent to 167 grams of marijuana.[3] Using this ratio,

---

[1] U.S.S.G. § 2D1.1 cmt. n.6.

[2] *Id.*

[3] U.S.S.G. § 2D1.1 cmt. n.8(D).

3

No. 14-31426

the PSRs concluded that Appellants should be held responsible for 233,800 kilograms of marijuana[4]—and that the base offense level for both should be set at 38, the highest level set forth by the Drug Quantity Table.[5]

Appellants objected to the use of a 1:167 ratio to convert the 1400 kilograms of AM-2201 into marijuana. Instead, they argued that a 1:1 ratio was appropriate because marijuana, not THC, is the "most closely related controlled substance" to AM-2201. Alternatively, they asked the district court to exercise its discretion under *Kimbrough v. United States*[6] to reject the 1:167 ratio. These objections prompted an evidentiary hearing. Two experts—one for the Government and one for the defense—testified at length in the hearing about the available scientific data on AM-2201. The Government's expert, Dr. Jordan Trecki, relied on five different categories of evidence to support his opinion that THC is the "most closely related substance" to AM-2201: (1) a "binding study" showing that THC and AM-2201 bind to the same cannabinoid receptor; (2) a "functional assay" showing that THC and AM-2201 both activate this receptor; (3) a drug discrimination study showing that (a) rats cannot tell the difference between THC and AM-2201 and that (b) AM-2201 is more potent than THC; (4) a "tetrad study" showing that rats react similarly to THC and JWH-018, an analogue of AM-2201; and (5) case studies showing that THC and AM-2201 have similar effects on human users. The defense expert, Dr. Nicholas Cozzi, devoted much of his testimony to criticizing the evidence relied upon by Dr. Trecki. In particular, Dr. Cozzi criticized Dr. Trecki for relying on animal studies—as opposed to human studies—and combining the results of several different studies—each of which was inconclusive standing alone—to

---

[4] To recap, the PSRs determined that 1400 kilograms of AM-2201 was equivalent to 1400 kilograms of THC. They then multiplied 1400 by 167 to calculate the equivalent quantity of marijuana.

[5] U.S.S.G. § 2D1.1(c)(1).

[6] 552 U.S. 85 (2007).

form his opinion.  When asked to provide his opinion, Dr. Cozzi remarked that it was "kind of a nonscience question," but testified that marijuana was the "most closely related controlled substance" to AM-2201 because "it's consumed in the same way and it's consumed for the same effect."  Both experts agreed, however, that there was no scientific basis for the 1:167 ratio used to convert THC into marijuana.[7]

The next day, the district court issued an oral ruling on Appellants' objections.  Citing the evidence relied upon by Dr. Trecki, the district court concluded that the Government had demonstrated by a preponderance of the evidence that THC was the "most closely related controlled substance" to AM-2201.  The court further declined to rely upon *Kimbrough* to reject the 1:167 ratio.  Though acknowledging that "the ratios in the sentencing guidelines are often arbitrary," the district court stated that these ratios "seek to outline the relative harm of certain drugs."  The court also noted that *Kimbrough* involved the comparison of "one ratio for one drug to another ratio for another drug" while this case concerned just one ratio.  The district court then held separate, closed hearings on the two § 5K1.1 motions filed by the Government on behalf of Appellants.  After hearing brief testimony, the court agreed to grant both § 5K1.1 motions, but withheld any ruling on the extent of the sentencing reductions until it sentenced Malone and Green later that afternoon.  The guideline range for both was the same: 135 to 168 months.  Based on their cooperation, the district court awarded a 30% reduction from the top of this range and sentenced them both to 117 months of imprisonment followed by three years of supervised release.

---

[7] R.2236 (Dr. Trecki testifying that there is "no literature . . . or expertise that explains why the ratio is 1:167"); R.2347 (Dr. Cozzi testifying that there is no "scientific basis" for the ratio).

No. 14-31426

II.

Appellants raise five claims of sentencing error: (1) the district court erred in concluding that THC is the "most closely related controlled substance" to AM-2201; (2) the district court did not recognize its discretion under *Kimbrough v. United States*[8] to vary from the 1:167 ratio for converting THC into marijuana; (3) the district court considered non-assistance-related factors in reducing the extent of their § 5K1.1 departures; (4) the district court awarded unreasonably small § 5K1.1 departures; and (5) the district court erred in balancing the 18 U.S.C. § 3553(a) factors. We address each claim of error in turn.

A.

Malone and Green challenge the district court's conclusion that THC is the "most closely related controlled substance" to AM-2201. Like Dr. Cozzi, they criticize the animal studies cited by Dr. Trecki as unreliable and incapable of providing meaningful insight into the effects of AM-2201 on human users. Moreover, Appellants argue that this Court explicitly endorsed their arguments in *Allen v. Pennsylvania Engineering Corp.*[9] In *Allen*, this Court concluded that the animal studies relied upon by the plaintiffs were "unreliable" and incapable of "furnish[ing] a scientifically valid basis for the conclusion" that the plaintiffs wished to draw.[10] In effect, Appellants ask us to do the same here.

We decline to do so. *Allen* concerned the admission of expert testimony *at trial*—this is a sentencing case. "[T]he appropriate standard regarding the admissibility of evidence at sentencing is substantially lower than that

---

[8] 552 U.S. 85 (2007).

[9] 102 F.3d 194 (5th Cir. 1996).

[10] *Id.* at 197-98 & n.5.

6

governing admissibility at trial."[11]  Under the Sentencing Guidelines, evidence admitted during sentencing need not meet the *Daubert* standard;[12] rather it need only have "sufficient indicia of reliability to support its probable accuracy."[13]  "This court has interpreted subsection 6A1.3(a)'s 'sufficient indicia of reliability' language 'to require that the facts used by the district court for sentencing purposes be reasonably reliable'"[14]—a standard not intended to be onerous.  "Even uncorroborated hearsay evidence," for instance, "may be sufficiently reliable."[15]  The studies relied upon by Dr. Trecki undoubtedly meet this bar.  There is no dispute that these studies were conducted by professional scientists using established methods and many were subjected to peer review.  This is more than enough to qualify them as "reasonably reliable."

Indeed, Appellants do not appear to take issue with the methods or results of the studies—but instead with inferences the district court drew from them concerning the effects of AM-2201 on human users.  This argument goes to the *sufficiency* of the evidence, not its *reliability*.  Our review of such a challenge is limited.  The district court's conclusion that THC is the "most closely related controlled substance" to AM-2201 represents a finding of fact.[16]  "We review the district court's findings of fact at sentencing for clear error . . . ."[17]  "The court will find clear error . . . 'only if, based on the entire evidence,

---

[11] *United States v. McCaskey*, 9 F.3d 368, 380 (5th Cir. 1993) (per curiam).

[12] *See id.*

[13] U.S.S.G. § 6A1.3(a).

[14] *United States v. Cabrera*, 288 F.3d 163, 170 (5th Cir. 2002) (per curiam) (quoting *United States v. Rogers*, 1 F.3d 341, 343-44 (5th Cir. 1993)).

[15] *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996).

[16] *See United States v. Figueroa*, 647 F.3d 466, 469 (2d Cir. 2011); *United States v. Brey*, No. 15-10165, 2015 WL 5521181, at *4 n.4 (11th Cir. Sept. 21, 2015); *United States v. Lane*, 616 F. App'x 328, 329 (9th Cir. 2015); *United States v. Beckley*, 515 F. App'x 373, 375 (6th Cir. 2013).

[17] *United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008).

the court is left with the definite and firm conviction that a mistake has been committed.'"[18] "If, after reviewing the record, the district court's view of the evidence is plausible, the district court's decision must be affirmed even if the judges on this Court, sitting as the trier of fact would have weighed the evidence differently."[19]

By this metric, we must affirm the district court's conclusion that THC is the "most closely related controlled substance" to AM-2201. It is significant that the district court gave this matter studied attention. It held a day-long evidentiary hearing during which two experts testified at length.[20] Both sides were allowed to present scientific evidence and cross-examine the other side's expert. After carefully considering all of this evidence, the district court issued a well-reasoned oral decision. While its inferences based upon the animal studies are debatable, nothing in the record leaves us with "the definite and firm conviction that a mistake has been committed." To the contrary, we agree with the district court that the assertion that we ought "compare an isolated chemical with a leafy green substance" seems implausible on its face—an uncertainty here not dispelled. Appellants sprayed AM-2201 onto a leafy herb to create Mr. Miyagi. Just as THC is the active ingredient in the leafy plant of marijuana, AM-2201 was the active ingredient in Mr. Miyagi. Indeed, any contention that the 1400 kilograms of AM-2201 that Appellants admitted to possessing would have been used to produce only 1400 kilograms of Mr. Miyagi—a product intended to mimic marijuana—is defied by the record; it

---

[18] *United States v. Nava*, 624 F.3d 226, 229 (5th Cir. 2010) (quoting *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006)).

[19] *Burns*, 526 F.3d at 859.

[20] As with lay testimony, "[a] district court's assessment of the relative credibility of opposing expert witnesses is entitled to deference." *Henderson v. Norfolk S. Corp.*, 55 F.3d 1066, 1069 (5th Cir. 1995).

reflects that the various participants in the conspiracy would have used this quantity of AM-2201 to produce at least twenty times as much Mr. Miyagi.

Appellants also presented little in the way of counterevidence at the evidentiary hearing.[21]  Their expert, Dr. Cozzi, testified only briefly about his opinion regarding the "most closely related controlled substance" to AM-2201—ultimately choosing marijuana because "it's consumed in the same way and it's consumed for the same effect."  But neither of these points are persuasive. Marijuana is not consumed in the same way as AM-2201; there is no evidence in the record that a user would smoke the *pure* form of AM-2201—just as a user would not smoke pure THC.  And while smoking marijuana may give users effects similar to consuming AM-2201, so also does THC.  We are not persuaded that the district court erred in determining that THC is the "most closely related controlled substance" to AM-2201.

To the extent Appellants challenge the district court's reliance on the 1:167 ratio for converting THC into marijuana, their arguments are similarly unavailing.  Even though both experts testified that the 1:167 ratio has no scientific basis, this Court has squarely held that district courts are not required to engage in "a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines" and ignore those parts that do not pass empirical muster.[22]  We fully agree with the Seventh Circuit that a rule to the contrary would render "sentencing hearings . . . unmanageable, as the focus shifts from the defendant's conduct to the 'legislative' history of the

---

[21] Accordingly, unlike *United States v. Hagman*, this is not a case where "the evidence appears to be equally balanced, or we cannot say upon which side it weighs heavier."  740 F.3d 1044, 1052 (5th Cir. 2014).  We also note that *Hagman* may no longer be good law in the wake of this Court's decision in *United States v. Vargas-Ocampo*, which rejected the applicability of the "equipoise rule" in the related context of sufficiency of the evidence to support a conviction.  *See* 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

[22] *United States v. Duarte*, 569 F.3d 528, 530-31 (5th Cir. 2009); *see also United States v. Mondragon-Santiago*, 564 F.3d 357, 366-67 (5th Cir.2009).

guidelines."[23]   As we have said before, "[e]mpirically based or not, the Guidelines remain the Guidelines.  It is for the Commission to alter or amend them."[24]

## B.

Appellants' next claim is that the district court did not recognize its discretion under *Kimbrough v. United States* to vary from the 1:167 ratio for converting THC into marijuana.  In *Kimbrough*, the Supreme Court held that district courts have discretion to vary from the Sentencing Guidelines based solely upon policy disagreement.[25]   And a defendant "is entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced."[26]   That is, a district judge is never *required* to vary under *Kimbrough*,[27] but every defendant is entitled to be sentenced by a judge who knows that she *could* vary under *Kimbrough* if she was so inclined.  This Court has reaffirmed this holding on several occasions.[28]

Appellants argue that the district court's comments during sentencing indicate that it did not appreciate its discretion to vary under *Kimbrough*.  Three sets of comments are relevant:  First, prior to the evidentiary hearing on Appellants' *Kimbrough* objection, the district court said the following:

> The Court would tell counsel, just so you know how the Court is leaning, that although the Court *might* be persuaded, the Court is of the mind that the tables in the sentencing guidelines are what they are, and that that issue may be an issue for a higher court.

---

[23] *United States v. Aguilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009).

[24] *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011).

[25] 552 U.S. 85, 109 (2007); *see also Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam) ("That was indeed the point of *Kimbrough*: a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them . . . .").

[26] *United States v. Burns*, 526 F.3d 852, 862 (5th Cir. 2008).

[27] *See Duarte*, 569 F.3d at 530-31.

[28] *See, e.g.*, *United States v. Clay*, 787 F.3d 328, 332 (5th Cir. 2015); *United States v. Garcia*, 655 F.3d 426, 432-34 (5th Cir. 2011).

No. 14-31426

> And I definitely would allow everyone to make their record on that issue, but that my leaning at this point in the morning, before I've heard the evidence, is not to vary or depart from those sentencing guidelines as they're written, or the chart as it's written in the sentencing guideline manual, because I'm just the district court judge.

Second, during the direct examination of Dr. Cozzi, the district court made this comment: "There seems to be no rhyme or reason to any of the stuff in the guidelines as to how the equivalent is to marijuana. It all seems to be a relativity type of assessment made by Congress to show the relative harm of these drugs."[29] And third, in ruling on Appellants' *Kimbrough* objection, the district court gave this explanation:

> The defendants have relied on the *Kimbrough* case in urging the Court to throw out this guideline. This Court will not do so for several reasons.
>
> First of all, the sentencing guidelines are the expression of Congress that this is what should be done. The Court acknowledges that the ratios in the sentencing guidelines are often arbitrary and present a relative -- by converting everything to marijuana, they seek to outline the relative harm of certain drugs.
>
> In *Kimbrough*, what the Court -- what the Supreme Court and the Court was doing was comparing one ratio for one drug to another ratio for another drug and pointing out the unfairness of those two ratios. In this case that's not what the defendants have asked us to do. They have simply asked us to throw out the ratio of 1:167 based on its arbitrary nature, and this Court would decline to do so.[30]

On this record, it is unclear whether the district court properly understood its discretion under *Kimbrough*. On the one hand, the district court

---

[29] *See also* R.2350 ("What you're talking about there is the relativity of one conversion -- as we all know, 2D1.1(d) converts everything to marijuana. It's the coin of the realm.").

[30] *See also* R.2351 ("[B]ut still in *Kimbrough* -- and, here again, I invite contradiction -- the conversion is between one equivalency to another equivalency and saying that that is the ratio that's unfair. It seems that the 1:167 is not that. That's going across the page and not up and down the page if you get what I'm saying.").

said that it "might be persuaded" to depart and ultimately "decline[d] to do so," rather than saying that it did not have the authority to do so.  There is also no question that the district court was aware of *Kimbrough*, and had read the opinion.[31]   But on the other hand, the district court said she was "just the district court judge" and made repeated references to the will of Congress.   It also appears that the district court may have interpreted *Kimbrough* in an unduly narrow fashion in suggesting that it only applies when "comparing one ratio for one drug to another ratio for another drug."   In *United States v. Simmons*, the district court declined to vary under *Kimbrough* because it believed the decision was a "narrow one" that only concerned the crack guidelines.[32]  This Court reversed and remanded because the "[d]istrict court unduly limited its own discretion," as "*Kimbrough* does not limit the relevance of a district court's policy disagreement with the Guidelines to the situations such as the cocaine disparity and whatever might be considered similar."[33]

But we need not resolve this question.  Harmless error review applies when a district court fails to recognize its authority to vary under *Kimbrough*.[34] The Government has a "heavy burden" in demonstrating that a sentencing error is harmless,[35] but it has met this burden here.   Unlike past cases involving this type of error, there is nothing in the record to indicate that the district court was inclined to vary from the 1:167 ratio or pronounce a lesser sentence.  The district court did not say that "the outcome [likely] would have been different" if it had discretion[36] or suggest that it was "hamstrung" by its

---

[31] In *Burns*, the district court sentenced the defendant before the Supreme Court issued its opinion in *Kimbrough*.  *See* 526 F.3d at 861.

[32] 568 F.3d 564, 569 (5th Cir. 2009).

[33] *Id.*

[34] *See, e.g.*, *United States v. Clay*, 787 F.3d 328, 332 (5th Cir. 2015); *United States v. Garcia*, 655 F.3d 426, 432-34 (5th Cir. 2011).

[35] *Clay*, 787 F.3d at 332.

[36] *Id.* (alteration in original).

lack of discretion.[37]  Nor did it even say that it was "troubled" by Appellants' sentences.[38]  To the contrary, the district court repeatedly commented on the "seriousness of the offense" and declined to accept the extent of the Government's recommended § 5K1.1 departures.  The district court also explicitly endorsed the 1:167 ratio on at least two occasions, commenting both times that it was designed to capture the "relative harm" of THC as compared to marijuana.  Even if the district court erred, we are confident that it would have imposed the same sentence.

C.

Appellants' third claim is that the district court considered non-assistance-related factors in reducing the extent of their § 5K1.1 departures.  In *United States v. Desselle*, this Court held "that the extent of a § 5K1.1 or § 3553(e) departure must be based solely on assistance-related concerns."[39]  Appellants argue that an exchange during sentencing demonstrates that the district court ignored this rule.  Following the pronouncement of Green's sentence, his counsel asked the district court why it had chosen to depart 30% from the *top* of his guideline range when the Government had recommended a 50% departure from the *bottom* of his guideline range.  The district court gave the following explanation:

> The Court has not accepted that recommendation for the low end of the guidelines.
>
> As the Court has noted, I am struck by the seriousness of the offense.  I am struck by the harm, both potential and actual, from what were very reckless actions on the part of the defendant.  It was reckless actions taken solely for the purpose of making a large amount of money.  It was a huge risk taken by the defendants which didn't work out so well.

---

[37] *Simmons*, 568 F.3d at 570.

[38] *Clay*, 787 F.3d at 332.

[39] 450 F.3d 179, 182 (5th Cir. 2006).

No. 14-31426

Appellants argue that this comment clearly demonstrates that the district court based the extent of their § 5K1.1 departures on non-assistance-related factors.

The Government does not argue otherwise. Conceding that the district court considered non-assistance-related factors, the Government asserts that *Desselle* should be read as imposing a "one-way ratchet."[40] That is, the Government argues that *Desselle* only prohibits a district court from considering non-assistance-related factors when *increasing* the extent of a defendant's § 5K1.1 departure, not when *limiting* the extent of a defendant's § 5K1.1 departure. Although this argument may find support in case law from other circuits,[41] it finds none in this Court's case law. In *Desselle*, this Court reasoned that the plain language of § 5K1.1 prohibits a district court from considering non-assistance-related factors in determining the extent of a § 5K1.1 departure.[42] There is nothing in the plain language of § 5K1.1 that hints at any distinction between increasing and decreasing the extent of a § 5K1.1 departure. The relevant portions of this provision are phrased in absolute terms—just like this Court's holding in *Desselle*. Accordingly, we are bound by this Court's previous statement of the law.[43]

---

[40] Government's Brief at 65.

[41] *See United States v. Davis*, 679 F.3d 190, 195-97 (4th Cir. 2012); *United States v. Rublee*, 655 F.3d 835, 839 (8th Cir. 2011); *United States v. Grant*, 636 F.3d 803, 817 (6th Cir. 2011) (en banc); *United States v. Chapman*, 532 F.3d 625, 629-30 (7th Cir. 2008); *United States v. Casiano*, 113 F.3d 420, 430 (3d Cir. 1997); *United States v. Manella*, 86 F.3d 201, 204-05 (11th Cir. 1996) (per curiam); *United States v. Mariano*, 983 F.2d 1150, 1155-57 (1st Cir. 1993); *United States v. Mendoza-Haro*, 595 F. App'x 829, 833-34 (10th Cir. 2014) (collecting cases).

Many of these cases concern reductions under Federal Rule of Criminal Procedure 35(b), not § 5K1.1, but this Court has held that "Rule 35(b) incorporates the standards set out in § 5K1.1." *United States v. Grant*, 493 F.3d 464, 467 n.1 (5th Cir. 2007).

[42] *See* 450 F.3d at 182.

[43] *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015) ("A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.").

No. 14-31426

That said, we again conclude that any error committed by the district court was harmless. "The Guidelines set out a three-part framework for the imposition of sentences: the district court (1) calculates the advisory sentencing range; (2) considers the specific offender characteristics and grounds for departure enumerated in the Guidelines; and (3) weighs the applicable factors in 18 U.S.C. § 3553(a) as a whole."[44]  The district court erred in this case by mixing steps two and three; rather than determining the extent of Appellants' § 5K1.1 departures and *then* considering whether their overall sentences required adjustment in light of the § 3553(a) factors, it jumped ahead and adjusted the § 5K1.1 departures themselves. This was error, but it was limited to "how the district court's analysis was sequenced."[45]  If we were to remand, we are confident that the result would be the same—the district court would simply grant Appellants' larger § 5K1.1 departures and then adjust their overall sentences downward in light of the § 3553(a) factors. The district court essentially said as much at sentencing. Though the district court's comments muddled the steps, they establish that the court does not believe a sentence reflecting a 50% departure from the bottom of Appellants' guideline range—68 months—would be appropriate for either Appellant. As a result, we conclude that here the district court's error was harmless. We caution, however, that this conclusion should not be read to dismiss the importance of the segmented process, avoiding as it does the unnecessary difficulties illustrated by this case.

### D.

In the alternative, Appellants claim that the § 5K1.1 departures awarded by the district court were unreasonably small given their substantial assistance to the Government. This Court, however, lacks jurisdiction over an

---

[44] *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (per curiam) (citing U.S.S.G. § 1B1.1(a)-(c)).

[45] *United States v. Troyer*, 677 F.3d 356, 360 (8th Cir. 2012).

unadorned challenge to the extent of a § 5K1.1 departure.[46]  As we held in *Hashimoto*, "[d]istrict courts have almost complete discretion to determine the extent of a departure under § 5K1.1.  The only ground on which the defendant can appeal the extent of a departure is that the departure was a violation of law."[47]  Appellants cannot evade this rule by framing the district court's failure to award bigger departures as an error of law.  Unlike other phases of the sentencing process, we do not review the district court's decision to limit a § 5K1.1 departure for reasonableness.  The district court is vested with complete discretion to determine the size of such a departure, as long as it does not commit an independent violation of law.  Other than the *Desselle* claim discussed above, Appellants do not allege such an independent violation—only that their departures were too small.

### E.

Appellants' final claim is that the district court committed clear error in balancing the 18 U.S.C. § 3553(a) sentencing factors.  In particular, Appellants argue that the district court gave undue weight to negative factors—such as the seriousness of the crime and the potential for harm—while ignoring positive factors—such as their extensive cooperation and lack of criminal intent.  This claim is not supported by the record.  The district court explicitly considered a number of mitigating factors at sentencing, including Green's expression of remorse, Malone's health and alleged lack of intent, and the "overall tragedy" of sentencing two young men to lengthy prison terms.[48]  The

---

[46] *See United States v. Hashimoto*, 193 F.3d 840, 843 (5th Cir. 1999) (per curiam) ("We would thus clearly lack jurisdiction over Hashimoto's case if he was challenging . . . the extent of a departure that was made . . . ."); *see also United States v. Alvarez*, 51 F.3d 36, 39 (5th Cir. 1995); *United States v. McKinley*, 32 F.3d 566, at *1 (5th Cir. 1994) (precedential under 5th Cir. R. 47.5.3).

[47] 193 F.3d at 843 (citation omitted).

[48] Even if the district court had not provided these reasons, there likely would be no reversible error given that both Appellants received a "Guidelines sentence."  *See United*

No. 14-31426

district court also necessarily considered Appellants' substantial cooperation in granting them both § 5K1.1 departures.  Though Appellants may disagree with how the district court balanced the § 3553(a) factors, their argument that these factors should have been weighed differently is not a sufficient ground for reversal.[49]

### III.

For the reasons stated above, we AFFIRM.

---

*States v. Mares*, 402 F.3d 511, 519 & n.7 (5th Cir. 2005) ("When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required.").

[49] *See, e.g.*, *United States v. Aldawsari*, 740 F.3d 1015, 1021-22 (5th Cir. 2014) ("Appellant cites no cases that would require this court 'to reweigh the section 3553(a) sentencing factors' in Appellant's favor."); *United States v. Heard*, 709 F.3d 413, 435 (5th Cir. 2013); *United States v. Kippers*, 685 F.3d 491, 500 (5th Cir. 2012) ("The mere fact that we 'might reasonably have concluded that a different sentence was appropriate' is insufficient to justify reversal of the district court's sentence . . . ." (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007))).