# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10411

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ABDULLAH EL HAGE,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-243-2

Before KING, SOUTHWICK, and HO, Circuit Judges.

PER CURIAM:*

After pleading guilty to conspiring to distribute controlled substances, Abdullah El Hage, a former smoke shop owner, received a lengthy yet below-Guidelines sentence. On appeal, El Hage claims the district court both overstated his Guidelines range and imposed a substantively unreasonable sentence. Both attacks share a common theme. According to El Hage, the district court improperly analogized, for purposes of sentencing, the drugs his

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

shop sold—smokeable plant material sprayed with synthetic cannabinoids, also known on the street as "spice"—to tetrahydrocannabinol rather than marijuana. We conclude, contra El Hage, that the analogy holds, and thus we AFFIRM.

## I.

In 2015, Abdullah El Hage and his Fort Worth smoke shop (called "I Smoke 'N More 2") came under suspicion when a confidential source told local police that El Hage's shop sold "spice." Sometimes mislabeled as an incense, potpourri, or air freshener, "spice" is a smokeable plant-based product laced with synthetic cannabinoids. It is often marketed as a "legal" alternative to marijuana. At El Hage's shop, customers could buy various "brand names" of spice, like "24K Monkey," "Diablo," "Dr. Feel Good," and "Brain Freeze."

Working undercover, DEA agents bought some of these products from El Hage's shop. Follow-up laboratory tests revealed that the synthetic cannabinoids in El Hage's spice were Schedule I controlled substances or various illegal analogues.[1] El Hage was arrested, and federal agents seized packets and other containers of spice from his shop, car, and home. El Hage's operation was soon linked to a larger spice distribution network. His spice's synthetic cannabinoids were manufactured in China and shipped to California. There, the synthetic cannabinoids were sprayed on plant material to make the spice. Once ready, the spice got packaged and shipped to Texas.

Following his arrest, El Hage was indicted and pleaded guilty to conspiracy to distribute controlled substances. *See* 21 U.S.C. § 846. El Hage's guilty plea was accepted, and the probation office prepared a presentence

---

[1] Specifically, the seven identified substances found in El Hage's spice were AB-CHMINACA, XLR-11, 5F-PB-22, 5F-AB-PINACA, 5-FLUORO-AMB, FUB-AMB, and 5-FLUORO-ADB. The first three are Schedule I controlled substances, *see* 21 C.F.R. § 1308.11(d)(49), (52), (69), and the last four are Schedule I controlled substance analogues, *see* 21 U.S.C. § 802(32)(A).

No. 17-10411

investigation report (PSR). The PSR deemed El Hage responsible for 88,783 grams of spice, an amount that was later reduced slightly by the district court after objections from El Hage and the Government.

A major issue during El Hage's sentencing was the appropriate base offense level under the federal Sentencing Guidelines for these 88,783 grams of spice. Ordinarily, once the quantity of drugs attributable to the defendant is settled, computing his base offense level is straightforward: the court matches the quantity to the appropriate entry in the Guidelines' drug quantity table. *See* U.S.S.G. § 2D1.1(c). When the particular drug does not appear in the drug quantity table, another step is added. *See id.* § 2D1.1, comment. (n.8(A), (D)). The court must first convert the quantity of drugs attributable to the defendant to an "equivalent quantity" of marijuana using the ratio supplied in the drug equivalency tables. *See id.* § 2D1.1, comment. (n.8(A)). Then, the court can use the equivalent quantity of marijuana to calculate the proper base offense level under the drug quantity table. *See id.*

El Hage's case presented yet another wrinkle. Neither "spice" nor the laced synthetic cannabinoids in El Hage's spice appear anywhere in the Guidelines. Because of this, the district court had to determine the drug in the Guidelines' drug equivalency tables which was "the most closely related" to El Hage's spice. *See id.* § 2D1.1, comment. (n.6). Per the Guidelines, this inquiry is, "to the extent practicable," guided by three factors:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.* Once the "most closely related" controlled substance is identified, the court could calculate El Hage's base offense level by using the marijuana-equivalency ratio of the comparator substance. *See id.*

Using this methodology, the PSR reported spice is most closely related to tetrahydrocannabinol, more commonly known as THC. THC—which is marijuana's main psychoactive chemical—has a 1 to 167 ratio with marijuana on the Guidelines' drug equivalency tables. *See id.* § 2D1.1, comment. (n.8(D)). This means that 1 gram of THC (or any comparator substance) is treated as equivalent to 167 grams of marijuana. *See id.* Using this 1:167 ratio and multiplication, the PSR concluded that El Hage's 88,783 grams of spice were equivalent to 14,827 kilograms of marijuana for sentencing purposes. Later, the district court reduced this figure slightly to 14,076 kilograms, a reduction that had no effect on the Guidelines range. This yielded a base offense level of 34, which was bumped up four levels through various enhancements and adjustments to a total offense level of 38. Combined with El Hage's criminal history category of I, and accounting for the 20-year statutory-maximum sentence, the PSR calculated a Guidelines range of 235 to 240 months' incarceration.

El Hage filed written objections to the PSR. Relevantly, he resisted the use of the 1:167 ratio, claiming that marijuana, not THC, was the most closely related controlled substance to his spice. By El Hage's logic, if the 1:167 ratio for THC was replaced with the more lenient 1:1 ratio for marijuana, his Guidelines range would be substantially reduced. In such case, he would be accountable for only 88,783 grams of marijuana, yielding a base offense level of 22, a total offense level of 26, and a Guidelines range of 63 to 78 months'

incarceration. El Hage, in addition, argued that even if THC was the right comparator, the Guidelines' 1:167 ratio for THC lacks a sound basis in science or policy. Accordingly, he asked the court to vary downwardly from the Guidelines range.

The Government defended the 1:167 ratio in a written response. It submitted a set of expert reports by Dr. Jordan Trecki, a DEA pharmacologist who routinely testifies for the Government in criminal cases about the nature and effects of synthetic cannabinoids. Dr. Trecki's report claimed that the particular synthetic cannabinoids El Hage sold were most similar to THC. The Government also stated that Dr. Trecki would testify at sentencing.

At the sentencing hearing, the parties quarreled over which drug—THC or marijuana—was closest to El Hage's spice.[2] To support its case that THC was the proper comparator, the Government called Dr. Trecki. Dr. Trecki testified that the synthetic cannabinoids laced in El Hage's spice were closer to THC than marijuana. Starting on Guidelines factor (A)—which relates to the controlled substance's chemical structure—Dr. Trecki said that it had no bearing either way. Per Dr. Trecki, no controlled substance in the Guidelines has a chemical structure similar to that of the synthetic cannabinoids at issue. But based on factors (B) and (C)—which respectively relate to pharmacological effect and potency—Dr. Trecki claimed that THC was the correct comparator. Dr. Trecki's conclusions were drawn from *in vitro* laboratory studies, *in vivo* animal studies, and various reports (hospital, coroner, and police reports).

On factor (B)—pharmacological effect—Dr. Trecki worked through the seven synthetic cannabinoids found in El Hage's spice. These synthetic

---

[2] Neither side argued below or on appeal that another controlled substance—say, hashish oil or cannabis resin—might be a better comparator. *See* U.S.S.G. § 2D1.1, comment. (n.8(D)) (listing "Hashish," "Hashish Oil," and "Cannabis Resin" on the drug equivalency tables). Thus, we have no occasion to consider whether a controlled substance other than THC or marijuana might be the most closely related.

cannabinoids, according to Dr. Trecki, bind to the same two receptors in the brain as THC (as confirmed during *in vitro* tests), creating a similar physical response of euphoria and pain mitigation. But unlike THC, which is a partial agonist, synthetic cannabinoids are full agonists. This means, according to Dr. Trecki, synthetic cannabinoids produce a more intense reaction than THC. Likewise, animals trained to differentiate THC from saline solution are unable to differentiate between THC and synthetic cannabinoids. Finally, the effect of THC on humans during clinical trials mirrors the adverse effects of synthetic cannabinoids reported by hospitals. In fact, the adverse effects are even greater for synthetic cannabinoids than for THC. Following up on that point, for factor (C)—potency—Dr. Trecki explained that the various synthetic cannabinoids are actually more potent than THC. In clinical trials using pure THC, the results included "nausea, vomiting, hallucinations, and paranoia," but were not "nearly as severe" as the reported effects of synthetic cannabinoids.

Dr. Trecki also explained that spice—which is just inert plant material sprayed with synthetic cannabinoids—is closer in pharmacological effect and potency to THC than marijuana. The "high" from marijuana, according to Dr. Trecki, involves euphoria, hallucinations, increased hunger, relaxation, and occasionally paranoid reactions, but "you are not dying from it." Synthetic cannabinoids, on the other hand, have been linked to severe addiction, vomiting, "zombie-like effects" in users, mass hospitalizations, seizures, heart attacks, organ failure, and deaths. Dr. Trecki added that even when synthetic cannabinoids are substantially diluted (to a ratio of 65 to 1), seizures, zombification, and throwing up can still occur. This disparity, according to Dr. Trecki, arises from two things. First, as explained above, synthetic cannabinoids are more potent than the THC in marijuana. Second, marijuana contains other active chemicals which counteract the effects of its naturally

No. 17-10411

occurring THC. In contrast, because the plant material in spice is completely inert, it has no mediating effect.

El Hage cross-examined Dr. Trecki, but did not call his own expert or submit documentary evidence. On cross-examination, Dr. Trecki admitted that none of the reports he had seen quantified the synthetic-cannabinoid concentration of El Hage's spice. And he admitted that uncertainty exists over what a particular batch of spice's synthetic-cannabinoid concentration will be, given the possibility for glitches in the coating process. And Dr. Trecki said he was not aware of any individual who had significant negative effects as a result of ingesting El Hage's spice. Dr. Trecki finally admitted that in "[e]xtremely low" doses, synthetic cannabinoids produce only a depressant effect.

Following both sides' presentation and argument, the district court rejected El Hage's attack on the PSR's equation of spice with THC, adopted the factual findings in the PSR, and calculated El Hage's Guidelines range as 235 to 240 months' incarceration. The district court varied downwardly from this range and imposed a sentence of 180 months' incarceration. The district court stated that its decision to vary downwardly to the extent it did was based on all the information presented, including "the dangerousness of this chemical," the quantity involved in El Hage's offense, and the amount of money he was bringing in. It also stated that it considered the balance of other factors, including El Hage's possession of a firearm, his initial cooperation, and his lack of criminal history.

El Hage now appeals.

## II.

In his appeal, El Hage challenges both the procedural and substantive reasonableness of his sentence. *See United States v. Scott*, 654 F.3d 552, 554-55 (5th Cir. 2011) (describing and distinguishing the two types of challenges). With respect to the former challenge, El Hage claims the district court

committed a significant procedural error by improperly calculating his Guidelines range. He follows up by arguing that even if his Guidelines range was properly calculated, his ultimate sentence was still substantively unreasonable. We consider, and ultimately reject, each claim in turn.

**A.**

El Hage first challenges the district court's calculation of his Guidelines range. Specifically, he claims the district court erred when it found that his spice—which is only fractionally composed of synthetic cannabinoids—most closely resembles pure THC. To make his case, El Hage argues that the Government only presented evidence that *pure* synthetic cannabinoids more closely resemble THC than marijuana. But El Hage did not distribute *pure* synthetic cannabinoids. An "isolated, pure chemical" cannot be analogous, according to El Hage, to "plant material sprayed with a diluted chemical." The Government's main rejoinder is that it presented enough evidence for the district court properly to conclude that spice—even though composed only fractionally of synthetic cannabinoids—is more closely related to THC than marijuana.[3] We side with the Government.

The identification of the most closely related controlled substance is a fact question we review for clear error. *See United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016). "The clear-error standard of review is a deferential one." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). "A factual

---

[3] The Government also argues the Guidelines call for an evaluation of the "controlled substance," which in this case is the synthetic cannabinoids and not the spice. *See United States v. Ramos*, 814 F.3d 910, 919 (8th Cir. 2016). *But see id.* at 923-24 (Bright, J., concurring in part and dissenting in part) (arguing that the correct comparator under the Guidelines is the whole mixture and not the underlying synthetic cannabinoid). According to the Government, if we look only at the underlying synthetic cannabinoids, overwhelming evidence existed that the synthetic cannabinoids were closer to THC than marijuana. Because we agree with the Government that spice itself is most closely related to THC, we do not consider whether the synthetic cannabinoids, by themselves, are the correct comparators.

finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013) (quoting *United States v. Johnston*, 127 F.3d 380, 403 (5th Cir. 1997)). Clear error does not occur merely because we "would have weighed the evidence differently." *United States v. Charon*, 442 F.3d 881, 891 (5th Cir. 2006) (quoting *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005)). But even if "there is evidence to support" the district court's finding, clear error occurs if after reviewing all the evidence we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Harris*, 434 F.3d at 773). Facts used to establish a defendant's base offense level need only be proven by a preponderance of the evidence. *See United States v. Romans*, 823 F.3d 299, 316-17 (5th Cir. 2016).

Our review confirms that the district court did not clearly err in finding that El Hage's spice most closely relates to THC. Recall that "to the extent practicable," the district court's inquiry is guided by three factors: whether the unlisted controlled substance is substantially similar to the referenced substance in (A) chemical structure, (B) pharmacological effect, and (C) potency. *See* U.S.S.G. § 2D1.1, comment. (n.6). The Government's expert witness—Dr. Jordan Trecki—testified at length about why spice is closer in pharmacological effect and potency to THC than marijuana. Marijuana, according to Dr. Trecki, never kills. Synthetic cannabinoids, on the other hand, sometimes do. The particular types of synthetic cannabinoids El Hage sold also have been linked to severe effects not found in marijuana, including mass hospitalizations, seizures, heart attacks, and organ failure. Dr. Trecki rebutted El Hage's argument that the synthetic cannabinoids in spice are sufficiently diluted to make them more analogous to marijuana. Per Dr. Trecki, even when synthetic cannabinoids are substantially diluted, serious ill effects can still occur. He added that these major negative effects occur for two reasons. First,

synthetic cannabinoids are more potent than the THC in marijuana. Second, marijuana, unlike spice, contains other active chemicals which counteract the effects of its naturally occurring THC. To combat all of this, El Hage called no witnesses and put on no documentary evidence of his own. Given this, we have no basis to form a "definite and firm conviction that a mistake has been committed." *Charon*, 442 F.3d at 891.[4]

El Hage tries unsuccessfully to marshal our recent opinion in *Malone* in support of his case. There, we were tasked with reviewing whether THC or marijuana was most closely related to a batch of pure synthetic cannabinoids. *Malone*, 828 F.3d at 334-38. After a hearing where Dr. Trecki (the very same) testified, the district court found the most closely related controlled substance to the defendant's pure synthetic cannabinoid was THC, not marijuana. *Id.* at 335-36. We upheld this factual finding. *Id.* at 337. Per the *Malone* court, the defendant's "assertion that we ought 'compare an isolated chemical with a leafy green substance'"—i.e., marijuana—"seems implausible on its face—an uncertainty here not dispelled." *Id.* at 337-38. We deemed the defendant's comparison inapt, in part, because pure synthetic cannabinoids often get sprayed on plant matter to make twenty times as much spice. *See id.* at 338. El Hage argues that his case presents the converse scenario to *Malone* and thus demands the converse result. He points out that his spice was "ready-to-smoke" and could not be used to make a greater quantity of drugs.

*Malone* does not foreclose the district court's factual finding in this case. In *Malone*, we in fact contemplated that in a different case the facial implausibility of comparing an "isolated chemical" (like THC) to a "leafy green

---

[4] El Hage does not press the argument that the Government failed to present evidence on a key variable—the synthetic-cannabinoid concentration of his spice. As El Hage's failure to press the argument forfeits it, we do not address the argument. *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010); *see also* Fed. R. App. P. 28(a)(8)(A).

substance" (like spice) might be "dispelled." *Id.* at 337-38. This is just such a case. The district court could reasonably conclude that such facial implausibility was dispelled by Dr. Trecki's testimony that spice causes severe effects more associated with THC than marijuana.

Based on Dr. Trecki's unrebutted testimony and the record as a whole, the district court's conclusion that El Hage's spice was most closely related to THC is "plausible." *See Alaniz*, 726 F.3d at 618. Thus, the district court's finding was not clear error, and El Hage's procedural challenge to his sentence fails.

## B.

El Hage's other attack on his sentence goes to its substantive reasonableness. Whether a sentence is substantively reasonable depends on the factors set forth in 18 U.S.C. § 3553(a).[5] *See Scott*, 654 F.3d at 555. We review the substantive reasonableness of sentences with a high degree of deference, because the district court "is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *Id.* (quoting *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011)). "We apply an abuse-of-discretion standard of review," *id.*, and "presume sentences within or below the calculated guidelines range are reasonable," *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015).

---

[5] Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense and provide just punishment, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment, (3) the kinds of sentences available, (4) the Sentencing Guidelines and any relevant policy statements, and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*United States v. Diehl*, 775 F.3d 714, 723 (5th Cir. 2015) (first citing 18 U.S.C. § 3553(a); then citing *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)).

No. 17-10411

El Hage presents two distinct arguments why the district court's failure to grant a greater downward variance was substantively unreasonable. He first re-urges a similar argument from his Guidelines challenge—that spice and THC are not comparable because spice is a mixture and THC is not. According to El Hage, to adjust for this mismatch, the district court should have downwardly varied further than it did. Next, El Hage contests the 1:167 THC-to-marijuana ratio itself. He notes that the record evidence showed that marijuana can be composed of up to 20% THC, and thus a 1:5, not a 1:167, ratio is appropriate. He also points out that the Government never presented a scientific or policy explanation for the 1:167 ratio. Relying on *Kimbrough v. United States*, 552 U.S. 85 (2007), El Hage argues that policy concerns over artificially high base offense levels for drug offenses permit a district court to vary downwardly.

Both halves of El Hage's substantive-reasonableness challenge are foreclosed by binding circuit authority. Regarding El Hage's first argument— that spice cannot be compared to pure THC—we rejected a nearly identical challenge in *United States v. Koss*, 812 F.3d 460, 471-72 (5th Cir. 2016). There, Koss appealed the district court's Guidelines calculation and the substantive reasonableness of her sentence, claiming the 1:167 ratio was inappropriate for a mixture containing a detectable but unknown concentration of THC. *Id.* at 470-72. After we rejected her Guidelines challenge, we determined that the district court did not abuse its discretion by refusing to vary downwardly based on an argument in contravention of the Guidelines' approach. *Id.* at 471-72. The same reasoning applies here. As was the case in *Koss*, the district court did not abuse its discretion by refusing to vary further away from the Guidelines' approach to mixtures containing an unknown, but detectable, concentration of a THC comparator. *Cf. id.*

No. 17-10411

Regarding El Hage's challenge to the 1:167 THC-to-marijuana ratio, we rejected an identical substantive-reasonableness challenge in *Malone*, 828 F.3d at 338. There, we declared "that district courts are not required to engage in 'a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines' and ignore those parts that do not pass empirical muster." *Malone*, 828 F.3d at 338 (quoting *United States v. Duarte*, 569 F.3d 528, 530-31 (5th Cir. 2009)). While the defendant "is entitled to be sentenced by a judge who knows that she *could* vary under *Kimbrough* if she was so inclined," this court made clear that "a district judge is never *required* to vary under *Kimbrough*." *Id.* at 339.[6] Thus, El Hage's attack on the scientific and policy bases for the 1:167 ratio cannot form a successful challenge to his sentence's substantive reasonableness.

Both prongs of El Hage's challenge fail, and we uphold the substantive reasonableness of El Hage's below-Guidelines sentence.

## III.

For the foregoing reasons, El Hage's sentence is both procedurally and substantively reasonable, and thus his conviction and sentence are AFFIRMED.

---

[6] Notably, El Hage does not argue that the district court failed to recognize its discretion under *Kimbrough* to vary from the 1:167 ratio based solely upon policy differences. *See United States v. Burns*, 526 F.3d 852, 862 (5th Cir. 2008) (holding that a defendant "is entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced"). Such an argument is thus forfeited, and we need not delve into whether the district court failed to recognize that it had such discretion. *See Scroggins*, 599 F.3d at 446-47; *see also* Fed. R. App. P. 28(a)(8)(A).