UNITED STATES, Appellee,

v.

Bradley Oliver BOWEN, Defendant—Appellant.

UNITED STATES, Appellee,

v.

Rinaldo TICCHIARELLI, a/k/a Ronaldo, a/k/a Whitney Dorey, Defendant—Appellant.

Nos. 96–2289, 96–2290.

United States Court of Appeals,
First Circuit.

Heard May 6, 1997.

Decided Sept. 24, 1997.

J. Bradford Coffey, Bangor, ME, by appointment of the Court, with whom Farrell, Rosenblatt & Russell, was on brief, for appellant Bradley Oliver Bowen.

G. Richard Strafer, Miami, FL, with whom Quiñon & Strafer, P.A. was on brief, for appellant Rinaldo Ticchiarelli.

Margaret D. McGaughey, Assistant United States Attorney, Portland, ME, with whom Jay P. McCloskey, United States Attorney, Bangor, ME, James L. Moore, Assistant United States Attorney, and Timothy D. Wing, Assistant United States Attorney, Bangor, ME, were on brief, for appellee.

Before TORRUELLA, Chief Judge,
BOWNES and CYR, Senior Circuit Judges.

TORRUELLA, Chief Judge.

This appeal presents an issue of first impression, namely, whether the term "hashish oil" under 21 U.S.C. § 841(b)(1)(D) and U.S.S.G. § 2D1.1 is unconstitutionally vague, or so ambiguous as to require the application of the rule of lenity, as applied to conduct occurring prior to a November 1995 amendment to the Sentencing Guidelines that provided, for the first time, a definition for the term.

Appellants were convicted for importing and trafficking, prior to the Guideline amendment, in a controlled cannabis-derived substance the precise classification of which was left to be determined during sentencing. The sentencing court determined the substance to be "hashish oil," as opposed to

"marihuana," and concluded that it was appropriate to apply a fifty to one quantity conversion ratio under the Drug Quantity Table of the Sentencing Guidelines. *See* U.S.S.G. § 2D1.1(c). Finding that genuine ambiguity regarding the definition of "hashish oil" prior to 1995 mandates the application of the rule of lenity in this case, we reverse and remand for re-sentencing.

## BACKGROUND

Defendants-Appellants Bradley Oliver Bowen and Rinaldo Ticchiarelli participated in a scheme, along with three other co-conspirators, to smuggle controlled substances from Jamaica into the United States, to store the substances in Maine, and from there to eventually smuggle contraband drugs into Canada. With Bowen's assistance, Ticchiarelli organized two boat trips to Jamaica to pick up marihuana and a marihuana-based substance and stored large quantities of these controlled substances in Maine, for later export into Canada.

The illicit substances involved were marihuana and much greater quantities of a black, tar-like marihuana-based substance. In a consolidated appeal, Brown and Ticchiarelli challenge the district court's determination during sentencing that the tar-like substance in which they were trafficking was "hashish oil." [1] Both seek to be sentenced as though the controlled substance were "marihuana." Prior to the sentencing stage, their cases travelled different procedural routes.

Pursuant to a plea agreement, Ticchiarelli pled guilty on September 14, 1995 to Counts One, Eight and Ten of a ten-count indictment. Although these counts made specific reference to "hashish oil," as part of his plea agreement Ticchiarelli did not concede that the Schedule I controlled substance was "hashish oil." Count One alleged a conspiracy to commit and the commission of, with Bowen and three others, the following crimes occurring between August 1994 and March 1995: importing a Schedule I controlled substance ("hashish oil") derived from marihuana into the United States in violation of 21 U.S.C. § 952; importing marihuana into the

United States in violation of 21 U.S.C. § 952; distributing the "hashish oil" intending that it would be unlawfully imported, in violation of 21 U.S.C. § 959(a)(1); possessing with intent to distribute a Schedule I controlled substance ("hashish oil") derived from marihuana, as well as possessing with intent to distribute marihuana, in violation of 21 U.S.C. § 841(a)(1); exporting a Schedule I controlled substance ("hashish oil") as well as marihuana from the United States, in violation of 21 U.S.C. § 953. Count Eight charged Ticchiarelli with making false representations to the Customs Service by presenting false identification, in violation of 18 U.S.C. § 1001, and Count Ten recited the other counts in invoking the criminal forfeiture provision of 21 U.S.C. § 853.

The plea agreement signed by Ticchiarelli stated that the Schedule I controlled substance of Count One was "hashish" when processed into liquid form, but Ticchiarelli nowhere conceded that the substance was "hashish oil," and the district court reserved the issue of the precise identity of the substance for determination at sentencing when it accepted the guilty plea.

Bowen, unlike Ticchiarelli and the other conspirators named in Count One of the indictment, did not enter into a plea bargain. On February 6, 1996, Bowen was convicted after a jury trial on Counts One, Six and Seven. Counts Six and Seven charged a second instance, in March 1995, of possession with intent to distribute a Schedule I controlled substance ("hashish oil"), in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(vii), and possession with intent to distribute marihuana, in violation of 21 U.S.C. § 841(b)(1)(D). The Presentence Investigation Report (PSR) in Bowen's case states that the contested Schedule I controlled substance was hashish oil. Bowen disputed that PSR determination and contended that the Guideline's use of the term "hashish oil" was unconstitutionally vague. Bowen sought to consolidate his case with those of his co-conspirators with respect to the issue of the nature of the controlled substance referred to as "hashish oil" in the indictment, and as

---

[1]. As discussed *infra,* Bowen asserts additional claims not put forward by Ticchiarelli.

to the legal validity of this allegedly ambiguous provision.

The cases were consolidated and on August 9, 1996, the district court convened an evidentiary hearing to determine the proper characterization of the controlled Schedule I substance for the purposes of sentencing Bowen, Ticchiarelli, and another co-conspirator. At the hearing, experts on each side offered differing definitions of the term hashish oil. On October 2, 1996, the district court ruled that based on undisputed facts regarding the physical appearance and chemical composition of the substance, the substance fit within the ambit of the "ordinary meaning" of hashish oil. *See United States v. Ticchiarelli*, 943 F.Supp. 77, 83 (D.Me.1996) (Order Determining the Nature of the Controlled Substance for Purposes of Sentencing). The district court also stated, however, that after considering expert testimony proffered by the government and the defendants, and after consulting further materials in order to ascertain the meaning of the term "hashish oil," it had discovered that "there is no scientific nor any universally accepted precise definition of the term hashish oil." *Id.* at 82.

Having found the controlled substance to be hashish oil, the court established the base offense level for Bowen and Ticchiarelli by following section 2D1.1(c): it multiplied the quantity (measured by weight) of the "hashish oil" attributable to the defendants by a factor of fifty, added that figure to the amount of other marihuana attributable to them, and determined the base offense level corresponding to the resulting, marihuana-equivalent drug quantity figure.[2] The base offense levels for Bowen and Ticchiarelli were 36 each, and, ultimately, their total offense levels were determined to be 38.

On appeal, both Ticchiarelli and Bowen assert that Sentencing Guideline section 2D1.1's use of "hashish oil" without a definition (prior to November 1995) was unconstitutional, and, in the alternative, that the rule of lenity required that any ambiguity as to the definition of "hashish oil" be resolved in their favor—that is, through a finding that the marihuana-based substance was not hashish oil for sentencing purposes. Bowen additionally claims error in the admission of certain evidence in his criminal trial and asserts that the fifty to one ratio between marihuana and hashish oil is arbitrary and irrational, thereby violating the Due Process clause of the Fifth Amendment.

## DISCUSSION

### I. The Meaning of "Hashish Oil"

The district court's interpretation of the meaning of "hashish oil" under the Sentencing Guidelines presents a legal question over which we assume *de novo* review, as does the legal issue of whether the term was vague or ambiguous prior to the 1995 amendment. *United States v. Camilo*, 71 F.3d 984, 986 (1st Cir.1995); *United States v. Bohai Trading Co., Inc.*, 45 F.3d 577, 580 (1st Cir.1995). The sentencing court's findings of fact regarding the properties of the controlled substance itself are subject to review for clear error. *Camilo*, 71 F.3d at 986.

The following factual findings regarding the controlled substance are undisputed: (1) it is derived from marihuana plant matter (cannabis sativa), and not from marihuana resin or hashish; (2) it is a black or near-black substance resembling road tar; (3) it is not pourable at room temperature; (4) it contains tetrahydrocannabinol (THC) in the 13 to 16 percent range; (5) it contains cannabinol and cannabidiol; (6) it contains no fragments of vegetation perceptible to the naked eye; (7) it contains chlorophyll and magnesium; (8) it originates in Jamaica. *See* 943 F.Supp. at 78. The appeal turns on whether this substance can be said to be "hashish oil."

Under the amendments to the Sentencing Guidelines effective November 1, 1995, the

2. The court determined that 393 kilograms of hashish oil and 48 kilograms of marihuana were attributable to the defendants. This amounts, after the one to fifty conversion, to 19,698 kilograms of marihuana equivalent, corresponding to a base offense level of 36. *See* U.S.S.G. § 2D1.1(c). Had the substance been deemed marihuana instead, the corresponding base offense level for Bowen and Ticchiarelli would have been 28. Given the total offense levels of 38, this eight point increase translates into a minimum difference in incarceration periods of 114 months for Bowen and 141 months for Ticchiarelli.

following definition of hashish oil was provided:

> Hashish oil, for the purposes of this guideline, means a preparation of the soluble cannabinoids derived from cannabis that includes: (i) one or more of the tetrahydrocannabinols (as listed in 21 C.F.R. § 1308.11(d)(25)), (ii) at least two of the following: cannabinol, cannabidiol, or cannabichromene, and (iii) is essentially free of plant material (*e.g.* plant fragments). Typically, hashish oil is a viscous, dark colored oil, but it can vary from a dry resin to a colorless liquid.

U.S.S.G. § 2D1.1(c), Drug Quantity Table, Note (J) (Nov. 1995).

■ Prior to November 1995, the term "hashish oil" was undefined in both the Code, *see* 21 U.S.C. § 841(b)(1)(D), and in the Guidelines. Moreover, the legislative history of the Comprehensive Crime Control Act of 1984, which first enacted the fifty to one ratio and introduced the term "hashish oil" to the Code, is silent as to the meaning of the term. *See* Pub.L. No. 98–473, 98 Stat.2030, 2070, 2086; S.Rep. No. 98–634 (1984); H.R.Rep. No. 98–1030 (1984). Although the undisputed facts regarding the substance at issue would appear to place it within the current definition, this definition, constituting a significant and substantive addition to the guidelines, cannot be retroactively applied to these defendants. *See United States v. Sanchez*, 81 F.3d 9, 12 (1st Cir.1996) (Guideline amendment that is not a mere clarification, and that is not covered by the policy statement of section 1B1.10, is not to be applied retroactively). For example, this definition includes a "dry resin" within the scope of the term "hashish oil," a matter which, as discussed below,[3] could not be considered part of the core meaning of "hashish oil" prior to the amendment.

It is clear, however, that whether or not the substance at issue is "hashish oil," it certainly qualifies as "marihuana" under the Code:

> The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, or . . . [any preparations thereof].

21 U.S.C. § 802(16) (Supp.1997). It is not disputed that the substance at issue in this appeal falls within this broad, catch-all definition of "marihuana." The question is whether it can also be found to be "hashish oil" under the pre-amendment Guidelines. Appellants raise several grounds for concluding that it cannot. We need not address their contention that the term "hashish oil" is void for vagueness, however, because our conclusion that the application of the rule of lenity is appropriate in this case provides the appellants the relief they seek.

## II. The Rule of Lenity

Appellants contend that in the face of ambiguity regarding the scope of the term "hashish oil," the district court should have followed the rule of lenity by accepting the more restricted definition of hashish oil offered by the defendants and by sentencing the defendants as though the substance were "marihuana" under the Guidelines.

■ As the Supreme Court has consistently held, the rule of lenity commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor. *See, e.g., United States v. Lanier*, —— U.S. ——, ——, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997); *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 7–8 (1st Cir.1997)(collecting cases). The important purposes served by the rule of lenity include the following: "to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts." *United States v. Kozminski*, 487 U.S. 931, 952, 108 S.Ct. 2751, 2764, 101 L.Ed.2d 788 (1988). However, the rule only "properly comes into play when, at the end of a thorough inquiry, the meaning of a criminal

---

**3.** *See infra* discussion of applicability of rule of lenity for core meaning of hashish oil.

statute remains obscure." *United States v. O'Neil*, 11 F.3d 292, 301 n. 10 (1st Cir.1993). Put another way, the rule of lenity means that "the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).

■ We find that experts for both the government and the defendants offered reasonable constructions of the term "hashish oil" at the August 9, 1996 evidentiary hearing, and further find that the legislative history provides no guidance as to the term's meaning. Presented with a variety of educated guesses as to the meaning of "hashish oil"—that is, presented with a genuine ambiguity—we hold that the rule of lenity applies. The defense expert, James Woodford, testified on the basis of his experience as a chemist and as a drug testing expert that hashish oil is a transparent, honey-colored oil produced in the process of compressing hashish into bricks. Part. Tr. of August 9, 1996 Hearing, at 38–40. Woodford testified that hashish oil is a liquid with high THC levels (around 40%) and that it is not a tarry, thick substance. *Id.* On the other hand, a government expert, a forensic chemist with the Drug Enforcement Agency, testified that the substance appeared ·to be hashish oil, for hashish oil is a marihuana-derived substance that is chiefly distinguished from marihuana by its lack of plant material and cystolithic hairs, and that the controlled substance lacked cystolithic hairs. *Id.* at 6–7. According to the government experts, "hashish oil" need not resemble other familiar oils that are liquid at room temperature. The record indicates that the substance, although undoubtedly a controlled substance, did not have the slippery, viscous, or liquid properties of an "oil," at least as that term is commonly used. This fact is, in our opinion, critical to our conclusion that the rule of lenity applies in this case.

Although no other circuit court has addressed this issue, appellants draw our attention to two district court decisions involving a similar tar-like marihuana-based substance in which the courts, in the face of conflicting definitions of hashish oil from experts, applied the rule of lenity. *See United States v. Gravelle*, 819 F.Supp. 1076, 1078–79 (S.D.Fla. 1993) (pursuant to rule of lenity, finding substance to be marihuana rather than hashish oil); *United States v. Schultz*, 810 F.Supp. 230, 234 (S.D.Ohio 1992) (pursuant to rule of lenity finding substance to be hashish rather than hashish oil). Both cases dealt with a thick, tarry, black substance that did not pour at room temperature.

In *United States v. Camilo*, we held that the rule of lenity was not applicable where a defendant challenged an enhanced sentence for trafficking in "crack" (as opposed to "powder") cocaine. *See* 71 F.3d at 990 (rule of lenity not applicable because "crack in reality does differ from cocaine powder," notwithstanding similar medical effects and identical scientific composition). That case is distinguishable from the instant appeal, because in *Camilo* we emphasized that one can clearly distinguish, as a practical matter, between crack and powder cocaine. The meaning of the term "crack" was thus not ambiguous. Here, "hashish oil," prior to the 1995 amendment, presents a problem of definitional ambiguity, a problem to which the rule of lenity clearly is addressed.

For lenity to be appropriate, genuine and insurmountable doubt must exist as to whether Congress, in enacting a higher penalty for "hashish oil," intended to include this particular, tarry substance within its scope. The district court, finding that "[t]he three experts presented by the parties were as deficient on the subject of definition as Congress and the Sentencing Commission," 943 F.Supp. at 79, surveyed a variety of publications for assistance. *See* 943 F.Supp. at 80–82. The "ordinary meaning" of hashish oil that the district court ultimately applied, however, did not represent a kind of least common denominator among the various definitions it had culled. Indeed, the publications the court cited include both narrow and broad definitions of hashish oil, and the court opted for a broader definition rather than a narrower one. *Id.* Even on the basis of the publications cited and quoted by the district court in its order, we find that, at the very

least, there exists ambiguity as to whether "hashish oil": (a) must be a liquid (or readily pourable, or capable of being administered in drops) at room temperature; and (b) must have a THC level in a range significantly higher than that of marihuana. We therefore conclude that the rule of lenity should have been applied in this case, requiring a narrower construction of "hashish oil." Had the substance been a potent liquid, derived from cannabis, and lacking plant material, then the rule of lenity would not have been appropriate. Although, as the district court pointed out, Bowen and Ticchiarelli should have known that they were trafficking in a substance that could result in serious penalties, as we have indicated, fair notice is not the sole consideration motivating the rule of lenity.

### III. Bowen's Other Claims

■ We need not dwell at length on Bowen's additional claims. First, his request for a downward departure due to the low THC levels of the substance is rendered irrelevant in light of our holding that the rule of lenity applies. Second, he challenges the constitutionality of the fifty to one conversion ratio between hashish oil and marihuana under U.S.S.G. § 2D1.1 and 21 U.S.C § 841(b)(1)(D). In declining Bowen's invitation to deem Congress' enactment of this ratio patently irrational, we need only direct his attention to *United States v. Singleterry*, 29 F.3d 733, 739 (1st Cir.1994), which upheld a challenge to the Guideline provision equating one gram of cocaine base with 100 grams of cocaine. Indeed, the fifty to one hashish oil ratio presents a much more straightforward case for after-the-fact rationalization: hashish oil can be expected to be more potent and more easily transported than marihuana.

■ Finally, Bowen challenges the admission of a drug ledger during his criminal trial. Even assuming, as Bowen alleges, that the drug ledger confiscated at the time of his arrest was not related to the conduct charged in the indictment, and therefore should have been excluded as irrelevant, on reviewing the record we find that any error was plainly harmless and did not implicate a constitutional right. Given the varied and strong proof,

based on direct evidence, of Bowen's participation in the conspiracy, we find the "weight of the additional evidence overwhelming," and conclude that the same verdict would almost certainly result from a new trial. *United States v. Rose*, 104 F.3d 1408, 1414 (1st Cir.1997). Although the drug ledger was used by the prosecution to corroborate the testimony of Bowen's co-conspirators, significantly, the accomplice testimony was forcefully corroborated by other real evidence and by the testimony of customs agents.

### CONCLUSION

For the foregoing reasons the sentences applied to the appellants are *vacated* and the case is *remanded* for sentencing pursuant to this opinion.