# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51173

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LE'ANN KOSS,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and KING and HIGGINSON, Circuit Judges.

CARL E. STEWART, Chief Judge:

Appellant Le'Ann Koss ("Koss") pleaded guilty to two federal drug offenses involving quantities of marijuana and was sentenced to 70 months' imprisonment on each offense, to run concurrently. On appeal, Koss raises several challenges to her sentence, all of which relate to the district court's determination that two substances involved in the offenses—a homemade "marijuana butter" and a "brown chunky substance"—were substances containing detectable amounts of Tetrahydrocannabinol ("THC") for purposes of calculating their marijuana equivalency using the 1:167 gram conversion ratio in the Sentencing Guidelines' Drug Equivalency Table for Schedule I Marijuana. *See* USSG § 2D1.1, comment. (n.8(D)). Finding no procedural or

No. 14-51173

substantive error in the sentence imposed, and no ambiguity regarding the Guidelines' listing of THC, we AFFIRM.

## BACKGROUND AND PROCEEDINGS

In 2013, law enforcement agencies received information suggesting that the Koss family was involved in the growth and interstate transfer of high-grade marijuana. A subsequent investigation revealed that, for several years, members of the Koss family had grown large amounts of marijuana at residences in California (purportedly under the guise of medical marijuana collectives) and used various individuals to transport the marijuana to Texas for distribution. During the course of a later presentence interview, Koss admitted that she had, on several occasions, obtained marijuana from one of her sons involved in the marijuana operation; distributed that marijuana to another individual who thereafter sold it; and essentially acted as a bookkeeper for one of her sons by collecting money in exchange for marijuana, writing down sales information, and paying the son's bills. During the same interview, Koss detailed that she had a number of medical conditions, that she self-medicated these conditions with marijuana, and that she had made marijuana-infused butter to ingest and aid in her self-medication.

The investigation eventually resulted in a superseding indictment that charged Koss and six co-defendants, including her husband and two of their sons, with one count of conspiracy to possess with intent to distribute in excess of 50 kilograms of marijuana and one count of aiding and abetting possession with intent to distribute in excess of 50 kilograms of marijuana. Koss pleaded guilty to both offenses without a plea agreement.

For sentencing purposes, the presentence investigation report ("PSR") held Koss personally accountable for "at least 954.679 kilograms of marijuana." This amount included 7.03 grams of a "brown chunky substance" and 5.42

2

kilograms of "marijuana butter,"[1] both of which law enforcement seized during a search of Koss' Texas residence. The PSR noted that, according to laboratory testing completed by the Texas Department of Public Safety ("DPS"), both substances contained detectable amounts of THC. Accordingly, the PSR used the Sentencing Guidelines' Drug Equivalency Table for Schedule I Marijuana—which provides that one gram of a mixture or substance containing a detectable amount of organic or synthetic THC is the equivalent of 167 grams of marijuana—and calculated that the two substances were the equivalent of 906.31 kilograms of marijuana. *See* USSG § 2D1.1, comment. (n.8(D)); *see also id.* § 2D1.1(c), (Notes to Drug Quantity Table (A)). The PSR then added that amount to 48.365 kilograms of marijuana otherwise involved in the conspiracy to arrive at the total amount of 954.679 kilograms of marijuana attributable to Koss for sentencing purposes.[2]

Based on the 954.679 kilograms of marijuana attributable to her, the PSR calculated Koss' base offense level as 30 under USSG § 2D1.1(c)(5). Koss received a three-level reduction for acceptance of responsibility, which reduced her offense level to 27. That level, combined with Koss' criminal history category of I, yielded a Guidelines-sentencing range of 70 to 87 months on each offense.

Koss filed a pre-sentencing objection to the PSR's use of the 1:167 gram ratio to convert the marijuana butter to its marijuana equivalent for purposes

---

[1] In the PSR and the Texas Department of Public Safety lab reports discussed *infra*, the marijuana butter at issue is referred to as a "moldy, foul smelling green substance." Neither party disputes that the moldy, foul smelling green substance was, as Koss described in her presentence interview, a homemade marijuana-infused butter. Accordingly, we refer to the substance as such herein.

[2] Koss concedes in her brief that the 48.365 kilograms of marijuana otherwise attributable to her is not at issue on appeal.

of calculating her base offense level. In that filing, Koss argued that the PSR incorrectly used the 1:167 gram ratio because that ratio was only applicable to substances made using pure THC, not substances like the marijuana butter that contained THC as an active ingredient merely because it was made using marijuana itself. Along the same lines, Koss argued that the Guidelines' Drug Equivalency Tables "clearly anticipate greater punishment for substances with higher concentration or potency" and, thus, the marijuana butter could not be treated as a substance containing THC for sentencing purposes because no quantification had been done on the purity or concentration of THC in the butter.

In a separate presentencing memorandum, Koss further fleshed out her objection to the use of the 1:167 gram ratio for the marijuana butter calculation and added a challenge to the PSR's use of the same ratio to calculate the marijuana equivalency of the brown chunky substance. Koss argued that the PSR mischaracterized the marijuana butter as a substance containing THC and that the substance was actually "a substance containing marijuana," the equivalency of which should have been calculated using the 1:1 gram ratio in USSG § 2D1.1, comment. (n.8(D)). Koss also represented that the PSR mischaracterized the brown chunky substance and that the substance was actually hashish, the equivalency of which should have been calculated using the 1:5 gram ratio for "Cannabis Resin or Hashish" in USSG § 2D1.1, comment. (n.8(D)). All combined, Koss claimed that she should be held accountable only for a total of 53.82 kilograms of marijuana, consisting of: "5.42 kilograms of a substance containing marijuana" (which converts to 5.42 kilograms of marijuana equivalent); "7.03 grams of hashish" (which converts to 0.035 kilograms of marijuana equivalent); and 48.365 kilograms of marijuana otherwise involved in the conspiracy. Based on her math and the 53.82

No. 14-51173

kilograms of marijuana, Koss argued that her base offense level should have been 20 under USSG § 2D1.1 (c)(10), which, combined with her criminal history category of I, meant that her Guidelines-sentencing range should have been 33 to 41 months on each offense.

At sentencing, Koss, through counsel, re-urged her objections to the offense level calculations pertaining to the marijuana butter and the brown chunky substance.  Koss did not challenge the results of the lab reports as inaccurate or otherwise offer evidence disputing the reports; rather, Koss continued to argue that the reports failed to classify the two substances in a manner that was consistent with the Guidelines, *i.e.*, the reports failed to quantify the concentration of THC in the marijuana butter so as to justify the 1:167 gram THC ratio as opposed to the 1:1 gram marijuana ratio and similarly failed to classify the brown chunky substance as hashish for purposes of the 1:5 gram hashish ratio as opposed to the 1:167 gram THC ratio.  The district court overruled Koss' objections and adopted the PSR's offense level and Guidelines-range calculations, explaining that "the probation office has correctly used the information it has and the only information it has which is th[e] lab report[s] and it has correctly applied the guidelines in arriving at the amount of controlled substance that should be used."  The court then sentenced Koss to a within-Guidelines sentence of 70 months' imprisonment on each count, to run concurrently, and five years of supervised release.  Koss timely appealed.

## DISCUSSION

On appeal, Koss presents several procedural and substantive challenges to her sentence, all of which derive from her argument that the district court erred when it used the 1:167 gram ratio in reference to the 5.42 kilograms of marijuana butter and the 7.03 grams of the brown chunky substance.  Koss

5

also contends that the separate listing of THC in the Drug Equivalency Table for Schedule I Marijuana, *see* USSG § 2D1.1, comment. (n.8(D)), is unconstitutionally ambiguous such that the rule of lenity should apply. We address each argument in turn.[3]

## I.

We first address whether the district court committed procedural or substantive error in imposing Koss' sentence. We review sentences "for reasonableness using a two-step process." *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C. § 3553(a)] factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Under this

---

[3] In its brief, the Government raised a separate issue in Koss' favor: whether the district court erred when sentencing Koss to 70 months' imprisonment because the amount of marijuana for which the PSR held her personally accountable (48.635 kilograms, excluding amounts of mixtures or substances containing detectable amounts of "THC" that were considered as relevant conduct for sentencing purposes but were not charged in the indictment) was less than the amount of marijuana charged in the indictment (in excess of 50 kilograms) for purposes of the twenty-year statutory maximum in 21 U.S.C. § 841(b)(1)(C). Because the Government raised this issue for the first time in its response brief, and Koss addressed the issue for the first time in reply, we have discretion whether to address the merits of this issue. *See United States v. Ramirez*, 557 F.3d 200, 203 (5th Cir. 2009). We exercise this discretion only to briefly note that the resolution of this issue is controlled by this circuit's recent case law, which suggests that the controlling drug quantity amount "for determining statutory minimum and maximum sentences . . . [is] the quantity of drugs with which [the defendant] was directly involved *or that was reasonably foreseeable to him*." *United States v. Haines*, 803 F.3d 713, 740–42 (5th Cir. 2015) (emphasis added). As we held in the appeal of one of Koss' co-conspirators, what thus matters here is that the charged conspiracy involved the transportation and distribution of well over 50 kilograms of marijuana, an amount that was reasonably foreseeable by Koss based on the circumstances of the offenses even if she did not personally participate in dealing or transporting that quantity of drugs. *See United States v. Koss*, 624 F. App'x 871, 873–74 (5th Cir. 2015) (per curiam).

first step, we review the district court's interpretation and application of the Guidelines *de novo* and its findings of fact for clear error. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Relevant here, "[t]he district court's calculation of the quantity of drugs involved in an offense is a factual determination." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)). Such a factual finding is "entitled to considerable deference and will be reversed only if [it is] clearly erroneous." *Id.* (quotation marks and citation omitted). Generally, "[a] factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole," and, "[u]ltimately, the district court need only determine its factual findings at sentencing by a preponderance of the relevant and sufficiently reliable evidence." *Id.* at 246–47 (quotation marks and citations omitted).

If we are convinced that the district court's factual determinations were not clearly erroneous and that the sentence imposed is otherwise procedurally sound, we proceed to the second step of our review and consider the substantive reasonableness of the sentence. *See Groce*, 784 F.3d at 294. "Appellate review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant." *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011) (quotation marks and citation omitted). "We apply an abuse-of-discretion standard of review, and within-Guidelines sentences enjoy a presumption of reasonableness." *Id.* That "presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in

No. 14-51173

balancing sentencing factors." *Id.* (quoting *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

A.

Koss argues that the district court committed several procedural errors in imposing her sentence.  Specifically, Koss challenges as error the district court's application of the 1:167 gram ratio in USSG § 2D1.1, comment. (n.8(D)), to the marijuana butter and the brown chunky substance because "neither [federal] statutes nor the Sentencing Guidelines provide any qualifying definition for THC (synthetic or organic) or any direction on how to apply its ratio provisions."  As a challenge to the district court's interpretation and application of the Guidelines, we review this argument *de novo*.  *See Cisneros-Gutierrez*, 517 F.3d at 764.  Alternatively, Koss challenges the sufficiency of the evidence supporting the district court's factual determination that the marijuana butter and the brown chunky substance were indeed "substances containing THC" for purposes of the 1:167 gram ratio.  As a challenge to the district court's calculation of the quantity of drugs involved in the offenses, we review Koss' latter argument for clear error.  *Id.*

1.

Despite Koss' arguments, we are not convinced that the district court erred in interpreting and applying the Guidelines.  Each of Koss' arguments here begins with one of two non-starters, to wit, either the notion that federal statutes *and* the Sentencing Guidelines are silent and provide no legal definition of THC or the notion that the Guidelines fail to provide adequate guidance on how to calculate the marijuana equivalency of mixtures or substances containing detectable amounts of THC.  Contrary to the first assertion, the Code of Federal Regulations defines the term THC in detail.  *See* 21 C.F.R. § 1308.11(d)(31).  Thus, had Koss challenged the results of the lab

reports as inaccurate at sentencing,[4] a legal definition was available to guide the district court's determination as to whether the marijuana butter and the brown chunky substance were in fact "substances containing THC" for purposes of the Guidelines. Koss' argument to the contrary is without merit.

As to the second assertion, Koss points to no infirmity in the Guidelines' careful directions for how to calculate the marijuana equivalency of substances—like the marijuana butter and the brown chunky substance at issue—that contain detectable amounts of THC. As is relevant here, the Guidelines instruct that a defendant's base offense level for violations of 21 U.S.C. §§ 841(a)(1), 846, is the level specified in the Drug Quantity Table set forth in USSG § 2D1.1(c). *See* USSG § 2D1.1(a)(5). However, as the commentary to § 2D1.1 recognizes, the Drug Quantity Table refers only to the more common controlled substances, *i.e.*, heroin, cocaine, PCP, methamphetamine, LSD, and marijuana, that are mentioned in the penalty provision of the Controlled Substances Act. *See* USSG § 2D1.1, comment. (n.8(A)); *see also* 21 U.S.C. § 841(b). The commentary to § 2D1.1 addresses the resulting gaps by setting forth Drug Equivalency Tables that address controlled substances not referenced in the Drug Quantity Table and that provide a means for combining different controlled substances to obtain a single offense level. *See* USSG § 2D1.1, comment. (n.8(A)-(D)). For example, as is pertinent here, the Drug Equivalency Table for "Schedule I Marijuana" sets forth that one gram of organic or synthetic THC converts to 167 grams of marijuana equivalent for purposes of calculating a defendant's base offense level. *Id.* § 2D1.1, comment. (n.8(D)).

---

[4] As we explain *infra*, at sentencing, Koss made several legal arguments directed at the lab reports but did not challenge the results of the lab reports as inaccurate.

No. 14-51173

In addition, § 2D1.1 and its commentary provide that "[u]nless otherwise specified, the weight of a controlled substance refers to the *entire weight of any mixture or substance* containing a detectable amount of the controlled substance." *Id.* § 2D1.1(c), (Notes to Drug Quantity Table(A)) (emphasis added); *see also id.* § 2D1.1, comment. (n.1) ("'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided."); *Chapman v. United States*, 500 U.S. 453, 459 (1991) (construing § 841's reference to a "mixture or substance containing a detectable amount" to mean that "[s]o long as [the substance] contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence"). The commentary to § 2D1.1 provides exceptions to this general rule for "materials that must be separated from the controlled substance before the controlled substance can be used," such as "fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance." USSG § 2D1.1, comment. (n.1).

Section 2D1.1(c) also expressly carves out caveats for certain controlled substances where the relevant weight for purposes of calculating a defendant's base offense level is the weight of the controlled substance itself, not the entire weight of the substance *and* its carrier medium, which requires evidence of purity or concentration. Specifically, § 2D1.1(c) provides that the relevant weight is the weight of the pure substance, itself, that is contained in a "mixture or substance" for "PCP (actual)," "Amphetamine (actual)," "Methamphetamine (actual)," and "Oxycodone (actual)." *Id.* § 2D1.1(c), (Notes to Drug Quantity Table (B)) ("For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual)."). Similarly, "[i]n the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper)," the

relevant weight does not include the carrier medium.  *Id.* § 2D1.1(c), (Notes to Drug Quantity Table (G)).

Though requiring several steps, the language of § 2D1.1 and its commentary provide clear directions for how to calculate the marijuana equivalency of mixtures or substances like the marijuana butter and the brown chunky substance that are determined to contain a detectable amount of THC. Our review indicates that the PSR, as adopted by the district court, conscientiously followed each step in light of the available evidence.

At sentencing, the district court adopted the PSR's calculation that 954.679 kilograms of marijuana were attributable to Koss in relation to the charged offenses.  This amount was based, in relevant part, on the DPS lab reports, which indicated that the marijuana butter and the brown chunky substance contained detectable amounts of THC and that each substance had a net weight of 5.42 kilograms and 7.03 grams, respectively.  Because THC is not a substance listed in the Drug Quantity Table, the PSR referred to the Drug Equivalency Table for Schedule I Marijuana in USSG § 2D1.1, comment. (n.8(D)), which sets forth that one gram of THC is the equivalent of 167 grams of marijuana.  The marijuana butter and the brown chunky substance are not substances that fall within the limited circumstances discussed above for which the Guidelines provide that the relevant weight for sentencing purposes is the weight of the pure substance itself and not the full weight of the substance and its carrier medium.[5]  Consequently, using the full weight of the

---

[5] Neither the brown chunky substance nor the marijuana butter would fall within the caveats carved out in Note B to the Drug Quantity Table for PCP (actual), Amphetamine (actual), Methamphetamine (actual), and Oxycodone (actual).  *See* USSG § 2D1.1(c), (Notes to Drug Quantity Table (B)).  There is no indication that the brown chunky substance, which Koss asserts was actually hashish, would fit the caveat in Application Note 1 to § 2D1.1 for "materials that must be separated from the controlled substance before the controlled

No. 14-51173

substances, the PSR converted the 5.42 kilograms of marijuana butter to 905.14 kilograms of marijuana equivalent and the 7.03 grams of the brown chunky substance to 1.7401 kilograms of marijuana equivalent. The PSR then added those two amounts to 48.365 kilograms of marijuana otherwise involved in the conspiracy to arrive at a total of 954.679 kilograms of marijuana attributable to Koss for sentencing purposes. That total drug quantity resulted in a base offense level of 30 under USSG § 2D1.1(c)(10). Koss' final offense level was reduced to 27 after a three-level reduction for acceptance of responsibility, which, combined with her criminal history category of I, yielded an applicable Guidelines-sentencing range of 70-87 months' imprisonment on each offense.

Based on the foregoing, we conclude that the district court's step-by-step application of the 1:167 gram ratio to calculate the marijuana equivalency of the marijuana butter and the brown chunky substance, and the resulting Guidelines-sentencing range, was sound. Thus, the district court committed no procedural error, unless, as Koss argues, the sentencing evidence was insufficient to show that the marijuana butter and the brown chunky substance were indeed substances containing detectable amounts of THC. We next discuss Koss' factual challenges to that effect.

2.

In addition to her general challenges to the district court's interpretation and application of the Guidelines, Koss challenges the sufficiency of the evidence supporting the district court's drug quantity determination. Specifically, Koss argues that the preponderance of the sentencing evidence

substance can be used." *See* USSG § 2D1.1, comment. (n.1). Similarly, as to the marijuana butter, Koss' entire reason for mixing THC with the butter was to ingest the controlled substance (THC) together with its carrier medium (the butter).

did not support the district court's determination that the marijuana butter and the brown chunky substance were in fact substances containing detectable amounts of THC for purposes of applying the 1:167 gram ratio in the Drug Equivalency Table for Schedule I Marijuana, *see* USSG § 2D1.1, comment. (n.8(D)), to calculate their marijuana equivalency.

We conclude that the district court's determination that the marijuana butter and the brown chunky substance were substances containing detectable amounts of THC for purposes of the 1:167 gram ratio was not clearly erroneous in light of the available sentencing evidence. At sentencing, the district court relied upon the information in the PSR, namely and as is relevant here, the DPS lab reports, to determine the total drug quantity attributable to Koss for sentencing purposes. As set forth above, the DPS lab reports indicated that the marijuana butter and the brown chunky substance did in fact contain detectable amounts of THC and that each substance had a net weight of 5.42 kilograms and 7.03 grams, respectively. Such information in the PSR is presumed reliable, and Koss bore the burden "to demonstrate by competent rebuttal evidence that the information [was] materially untrue, inaccurate or unreliable." *United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015) (quotation marks and citation omitted); *see also United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013) ("Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. . . . [I]n the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." (ellipsis in original) (quoting *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009)).

Koss did not attempt to present such rebuttal evidence, nor did she object to the admission of the DPS lab reports at sentencing or object to the results of the lab reports as inaccurate or materially untrue. As the Government points

out in its brief, Koss did not call the Government's laboratory technician or any other chemist to testify; she did not offer any evidence of flaws in the DPS lab's practices; she did not take the stand at sentencing to explain how she made the marijuana butter[6] or to clarify the contents of the brown chunky substance; nor did she did call any witnesses to explain the contents of either substance. Absent contrary evidence, we hold that the DPS lab reports—which reflected that the marijuana butter and the brown chunky substance were in fact substances containing a detectable amount of THC—were sufficient to support application of the 1:167 gram ratio by a preponderance of the evidence and that the district court did not clearly err in calculating the marijuana equivalency of the marijuana butter and the brown chunky substance using that ratio.

Koss argues that the DPS lab reports provided an insufficient starting point for the district court's use of the 1:167 gram ratio. As to the brown chunky substance, Koss contends that the DPS lab reports were insufficient because the reports fail to account for the fact that the substance was actually hashish. Thus, Koss argues, application of the 1:167 gram ratio for a substance containing THC was inappropriate because USSG § 2D1.1, comment. (n.8(D)), expressly provides that "substances containing hashish" are to be converted using a 1:5 gram ratio. The problem with Koss' argument to this effect is that she failed to challenge the DPS lab reports in any meaningful way at

---

[6] To be fair, the PSR does reflect that Koss informed the probation department that she made the marijuana butter using between five to seven grams of low-grade marijuana per pound of butter. However, even assuming such a statement is relevant, Koss did not corroborate this self-serving statement with any testimony or evidence at sentencing. We decline to hold that the district court's reliance on the DPS lab reports was clear error based solely on Koss' uncorroborated, self-serving testimony in the PSR. *Cf. United States v. Allibhai*, 939 F.2d 244, 254 (5th Cir. 1991) (holding that, in finding offense conduct relevant to the calculation of a defendant's base offense level, a "district court need not credit [the defendant's] self-serving testimony, and is free instead to consider other evidence").

No. 14-51173

sentencing or otherwise present any competent rebuttal evidence suggesting that the brown chunky substance was actually hashish. The only information available to the district court at sentencing tending to show that the brown chunky substance was actually hashish was the representations of Koss' counsel in open court and Koss' legal argument in her presentencing memorandum. Such arguments are not evidence, let alone the type of competent rebuttal evidence sufficient to show that the information in the PSR, including the incorporated results of the DPS lab reports, was inaccurate or materially untrue. *See Alaniz*, 726 F.3d at 619 ("Mere objections do not suffice as competent rebuttal evidence." (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998))). Accordingly, Koss' challenge to the PSR's purported mischaracterization of the brown chunky substance fails.

As to the marijuana butter, Koss' challenge is two-fold. First, Koss contends that the DPS lab reports were insufficient to support application of the 1:167 gram ratio because the reports failed to quantify the concentration or purity of THC in the butter. In support, Koss presents a novel argument that such evidence of concentration or purity is required because the Drug Equivalency Table for Schedule I Marijuana contemplates harsher punishments for more potent controlled substances, and thus, applying the 1:167 gram ratio to the marijuana butter, which is the harshest penalty in the Table, was inappropriate absent evidence of the purity or concentration of THC in the butter. Koss has pointed to no authority—from our case law or from the Guidelines themselves—suggesting that evidence of concentration or purity is required before the 1:167 gram ratio can be applied to a mixture or substance containing a detectable amount of THC. Indeed, the Guidelines expressly provide for considerations of purity in the context of several controlled substances—*i.e.*, PCP (actual), Amphetamine (Actual), Methamphetamine

15

(Actual), and Oxycodone (actual), *see* USSG § 2D1.1(c) (Notes to Drug Quantity Table (B))—and THC is not one of them. Accordingly, we reject this argument.

Second, Koss argues that the DPS lab reports were insufficient to support application of the 1:167 gram ratio to the marijuana butter because the reports merely indicate that the butter contained THC. Koss maintains that this was insufficient because all five substances listed in the Drug Equivalency Table for Schedule I Marijuana—marijuana or cannabis (granulated, powdered, etc.); hashish oil; cannabis resin or hashish; and organic and synthetic THC—each contains THC as an active ingredient, and thus, a lab report that merely indicates that a substance contains THC could just as well mean that the substance contained marijuana itself and that a less harsh ratio should apply. We recognize the logical underpinnings of this argument. However, the plain language of the Guidelines states that mixtures or substances containing a detectable amount of THC are properly calculated using the 1:167 gram ratio. The DPS lab reports indicated that the marijuana butter was in fact a substance containing a detectable amount of THC, and Koss put on no evidence at sentencing tending to suggest that the reports' results were inaccurate or that the DPS lab practices failed to test the marijuana butter in a manner that was consistent with the Guidelines. We therefore cannot conclude that the district court's determination was clearly erroneous.

In sum, we reject each of Koss' procedural challenges to her sentence. Contrary to her assertions, we are convinced that the district court properly interpreted and applied the Guidelines, including its adoption of the PSR's use of the 1:167 gram ratio in USSG § 2D1.1, comment. (n.8(D)), to calculate the marijuana equivalency of the marijuana butter and the brown chunky substance as substances containing THC. Because we conclude that the

No. 14-51173

district court committed no procedural error, we proceed to the next step of our review and address the substantive reasonableness of Koss' sentence.

B.

Koss presents several challenges to the substantive reasonableness of her sentence, and we review each under the deferential abuse-of-discretion standard of review.[7] *Scott*, 654 F.3d at 555. For the same reasons underlying her procedural challenges, *i.e.*, that the Guidelines fail to provide adequate guidance related to mixtures or substances containing detectable amounts of THC and that the sentencing evidence was insufficient to warrant application of the 1:167 gram ratio, Koss argues that her 70-month sentence is substantively unreasonable. We reject these arguments for the reasons previously discussed.

Koss further argues that her sentence was substantively unreasonable because the sentencing evidence suggested that she was merely a medical marijuana user who made marijuana butter to treat her medical conditions. Such arguments merely reiterate the mitigating circumstances presented to the district court. Koss has not shown that the district court improperly accounted for any of the § 3553(a) factors or that the district court's balancing of those factors represents a clear error of judgment. *Id.* Koss' disagreement with the district court's balancing of the mitigating factors in light of the § 3553(a) factors does not rebut the presumption of reasonableness that attaches

---

[7] At sentencing, Koss made a number of sweeping arguments aimed at the substantive reasonableness of her sentence, but the record is unclear as to whether she preserved her challenge to the substantive reasonableness of her sentence by actually objecting. Thus, our review in this case could be for plain error. *See, e.g.*, *United States v. Alvarado*, 691 F.3d 592, 598 (5th Cir. 2012). The Government does not press this standard of review issue in its brief, and it is unnecessary to do so here. Even under the abuse-of-discretion standard, which is more favorable to Koss, Koss' challenges to the substantive reasonableness of her sentence fail.

No. 14-51173

to her within-Guidelines sentence. *See United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010) (per curiam) ("A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence.").

If anything, Koss' mitigation arguments related to her medical uses for marijuana fail to account for the "totality of the circumstances" surrounding the charged offenses. *See Gall*, 552 U.S. at 51 (noting that the review of a sentence imposed for substantive reasonableness must "take into account the totality of the circumstances"). Beyond detailing Koss' history with medical marijuana, the sentencing evidence also established that the charged conspiracy involved the interstate transfer and subsequent distribution of large quantities of high-grade marijuana and that Koss facilitated this drug operation to some extent by acting as a bookkeeper for one of the main conspirators and, at times, personally distributing marijuana. Because Koss has failed to rebut the presumption of reasonableness that attaches to her within-Guidelines sentence, and because Koss' arguments fail to account for the totality of the circumstances surrounding the charged offenses, we conclude that the district court did not abuse its discretion in sentencing Koss to the low end of the applicable Guidelines-sentencing range. Accordingly, we reject Koss' challenges to the substantive reasonableness of her sentence.

II.

Procedural and substantive challenges aside, Koss contends that the listing of THC in the Drug Equivalency Table for Schedule I Marijuana, *see* USSG § 2D1.1, comment. (n.8(D)), is ambiguous such that the rule of lenity should apply. In support, Koss reasserts that neither federal statutes nor the Sentencing Guidelines provide a qualifying definition of THC and that this lack of a qualifying definition presents an ambiguity that should be resolved in her

18

No. 14-51173

favor. Koss also more generally reasserts that based on the "scheme" of the Guidelines, it is at least ambiguous whether the Sentencing Commission intended to limit use of the 1:167 gram ratio based on considerations of the purity or concentration of THC in a mixture or substance.

We review Koss' constitutional claim that the rule of lenity is applicable *de novo*. *See United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001) (per curiam). "The rule-of-lenity fosters the constitutional due-process principle 'that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited.'" *Id.* (quoting *Dunn v. United States*, 442 U.S. 100, 112 (1979)). The rule "applies only when, after consulting traditional canons of statutory construction," this court is left with an ambiguous statute. *Id.* (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)).

In interpreting the Guidelines, this court applies "the ordinary rules of statutory construction." *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012). If "the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result." *Id.* Only where that language is ambiguous does the rule of lenity apply and require that the ambiguity be resolved in favor of a criminal defendant. *Id.*

We reject Koss' first lenity argument—that neither federal statutes nor the Guidelines define THC, which creates a problem of "definitional ambiguity"—for the same reasons previously discussed in light of the statutory definition of THC at 21 C.F.R. §1308.11(d)(31). For the reasons explained herein, we reject Koss' second argument related to the "scheme" of the Guidelines because the plain language of § 2D1.1 and its commentary is clear, unambiguous, and makes no mention of purity or concentration as requisite considerations before the 1:167 gram ratio can be applied to mixtures or substances containing a detectable amount of THC.

19

As we meticulously set forth above, § 2D1.1 and its commentary provide that when determining the total drug quantity attributable to a defendant, courts should consider the entire weight of a mixture or substance containing a detectable amount of a controlled substance listed in the Drug Quantity Table or one of the corresponding Drug Equivalency Tables. If that mixture or substance contains a detectable amount of THC, § 2D1.1 and its commentary provide that the entire weight of that mixture or substance is to be converted to its marijuana equivalent using a 1:167 gram ratio. This language is plain, unambiguous, and makes no mention of THC concentration or purity as relevant considerations. Thus, the rule of lenity and Koss' novel arguments related to the "scheme" of the Guidelines are of no moment. *See United States v. Monjaras-Castaneda*, 190 F.3d 326, 330 (5th Cir. 1999) (holding that "use of the rule of lenity is not warranted" where the language of the Guidelines is plain).

Nor can we say that following the plain language of the Guidelines in this case, which leads to an application of the 1:167 gram ratio to the marijuana butter and the brown chunky substance, leads to an absurd result. *See Serfass*, 684 F.3d at 551–52 (noting that, under traditional canons of statutory construction, the plain language of the Guidelines controls "unless it creates an absurd result"). Indeed, the facts of this case, particularly the circumstances surrounding the marijuana butter, highlight why the Sentencing Commission would have sound reasons not to limit the reach of the 1:167 gram ratio based on considerations of purity. It could be difficult for the Guidelines to provide individualized guidance for all marijuana byproducts and edibles, the components of which may be unknown, not readily testable, and indistinguishable from a carrier medium. The Sentencing Commission could thus reasonably intend to punish those who combine THC—irrespective

No. 14-51173

of its origin, *i.e.*, organic THC stripped from marijuana, or synthetic THC created in laboratory-like circumstances—with carrier mediums to make large quantities of marijuana-containing products harshly without requiring an inquiry into the purity of THC in the resulting product. Such inflexibility does not create an absurd result and, instead, is at least one rational deterrent to criminal activity involving edibles that contain a psychoactive ingredient.

This is not to say that following the plain language of the Guidelines in this case does not lead to a harsh result. As Koss repeatedly urged at sentencing, we recognize the harshness that results from application of the 1:167 gram ratio, which is the stiffest penalty in the Drug Equivalency Table for Schedule I Marijuana, to homemade marijuana-edibles like the marijuana butter involved in the offenses with which Koss was charged. But, harshness without ambiguity does not require application of the rule of lenity, nor should it trigger an analysis of the Guidelines' scientific bases and empirical precision.[8] *Cf. Albernaz v. United States*, 450 U.S. 333, 342 (1981) ("The rule [of lenity] comes into operation at the end of the process of construing what

---

[8] *See United States v. Malone*, 809 F.3d 251, 258 (5th Cir. 2015) ("Even though both experts testified that the 1:167 ratio [for converting THC into marijuana] has no scientific basis, this Court has squarely held that district courts are not required to engage in a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines and ignore those parts that do not pass empirical muster. We fully agree . . . that a rule to the contrary would render sentencing hearings . . . unmanageable, as the focus shifts from the defendant's conduct to the legislative history of the guidelines. As we have said before, empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them." (internal alteration and quotation marks omitted)). In *Malone* we dealt with, *inter alia*, two defendants' request that the district court exercise its discretion to reject the 1:167 gram ratio on policy grounds under *Kimbrough v. United States*, 552 U.S. 85 (2007). *See Malone*, 809 F.3d at 255, 258–63. Here, Koss made no request that the district court depart or vary from the Guidelines-range for any reason; instead, Koss couched her challenges to the district court's reliance on the 1:167 gram ratio in terms of the factual and legal arguments discussed herein.

No. 14-51173

Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." (internal quotation marks and citation omitted)). The language of § 2D1.1 and its commentary is clear and unambiguous in applying the 1:167 gram ratio to marijuana-edibles like the marijuana butter that are mixtures or substances containing a detectable amount of THC. Unless and until the Sentencing Commission finds it appropriate to punish marijuana-edibles less harshly, this unambiguous language controls regardless of the harshness of resulting sentences.

Koss argues that ambiguity in the Drug Equivalency Table for Schedule I Marijuana is apparent if, again, one accepts her assertion that the Guidelines contemplate harsher punishments for substances containing more potent or concentrated controlled substances. Koss extends this assertion by arguing that, because the 1:167 gram ratio for THC is the harshest penalty in the Schedule I Marijuana Table, the only rational reading of the Table is that application of the 1:167 gram ratio is only appropriate where there is evidence that a mixture or substance contains a high concentration or purity of THC. This argument fails for several reasons. First, as we mention above, harshness, alone, is not the controlling consideration for purposes of our rule of lenity analysis. Second, and as previously mentioned, Koss has pointed to no authority, from our case law or the Guidelines themselves, suggesting that the Schedule I Marijuana Table contemplates quantification of purity as a delineating factor between the conversion ratios authorized there. That the Guidelines expressly provide for purity as a controlling factor in the context of other substances, *see* USSG § 2D1.1(c), (Notes to Drug Quantity Table (B)), decidedly undercuts this argument and indicates the Sentencing Commission's awareness of the need to provide for purity considerations when it deems appropriate. *Cf. Serfass*, 684 F.3d at 552 (holding that "[t]he inclusion of a . . .

requirement in one portion of the guidelines confirms that its omission from another portion of the same guideline was intentional"). Accordingly, this argument does not give rise to an ambiguity that requires this court to apply the rule of lenity to the benefit of Koss.

Finally, Koss argues that applying the rule of lenity in this case is appropriate under *United States v. Bowen*, 127 F.3d 9 (1st Cir. 1997), a case addressing whether the term "hashish oil" in USSG § 2D1.1 was unconstitutionally ambiguous before the 1995 amendments to the Guidelines added the definition that now appears at Note (I) to the Drug Quantity Table. *See* USSG § 2D1.1(c), (Notes to Drug Quantity Table (I)). The facts and circumstances in *Bowen* are materially distinguishable from those of this case, and these distinctions cut against applying the rule of lenity here.

Two key features in *Bowen* drove the First Circuit's decision that lenity was required: first, federal statutes and the Sentencing Guidelines provided no definition of hashish oil at the time of the defendants' conduct; and second, each party tendered experts who attempted to bridge this definitional gap by testifying as to reasonable definitions of the term hashish oil in connection with the "black, tar-like" substance at issue. *Bowen*, 127 F.3d at 13–15. In light of these two features, and based on the rule of lenity, the First Circuit held that the sentencing court erred in applying a broader definition of hashish oil, as opposed to a narrower definition that would have reduced the defendants' sentences. *Id.* at 14–15.

Neither of these *Bowen* drivers is present here. First, as we have previously mentioned several times, the Code of Federal Regulations defines the term "THC" in detail. *See* 21 C.F.R. § 1308.11(d)(31). Thus, unlike the situation in *Bowen*, the district court here was not faced with a federally undefined term from the Drug Equivalency Table for Schedule I Marijuana;

rather, as we set out above, the court was faced with lab reports that were sufficient to support application of the 1:167 gram ratio and, because they were unchallenged by Koss, cut off any further exploration into the legal definition of THC as that definition could relate to the contents of the marijuana butter and the brown chunky substance. Second, and similarly, the battle of the experts highlighting the First Circuit's analysis in *Bowen* is noticeably missing from the sentencing record in this case. Koss offered no evidence, including lay or expert testimony, supporting her novel theories as to the PSR's mischaracterization and mistreatment of the marijuana butter and the brown chunky substance. Faced with no challenge to the lab reports, and no evidence contradicting the PSR's characterization of the substances at issue, we cannot conclude that applying the rule of lenity is required in this case based on *Bowen*.

In sum, despite Koss' harshness arguments and novel theory related to the scheme of the Guidelines, § 2D1.1's directives regarding the use of the 1:167 gram ratio to calculate the marijuana equivalency of mixtures or substances containing a detectable amount of THC are clear and unambiguous. In the absence of an ambiguity, we reject Koss' arguments that the rule of lenity is applicable.

## III.

Having carefully reviewed the record and Koss' arguments on appeal, we conclude that Koss' sentence, which was admittedly driven by the PSR's treatment of the marijuana butter and the brown chunky substance, was procedurally and substantively sound in light of the evidence that was available at sentencing. Because we also find no ambiguity in the controlling portions of the Guidelines that would warrant application of the rule of lenity, we AFFIRM.