# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 14-51173

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LE'ANN KOSS,

Defendant - Appellant

---

Appeal from the United States District Court for the
Western District of Texas, Waco

---

## ON PETITION FOR REHEARING EN BANC

(Opinion 02/05/16 , 5 Cir., _____ , _____ , F.3d _____ )

Before STEWART, Chief Judge, and KING and HIGGINSON, Circuit Judges.

PER CURIAM:

( )  Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

(X) Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor (FED R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.


ENTERED FOR THE COURT:

_____
UNITED STATES CIRCUIT JUDGE

JAMES L. DENNIS, Circuit Judge, joined by JOLLY, SMITH, and GRAVES, Circuit Judges, dissenting from the denial of rehearing en banc:

Tetrahydrocannabinol ("THC") is the active ingredient contained in all cannabis-derived controlled substances. The Sentencing Guidelines call for the punishment of a drug offender according to the weight of the substance involved in his offense and the equivalency ratio applicable to the substance. As to cannabis-derived substances, the Guidelines provide in "Schedule I Marihuana":

> 1 gm of Marihuana/Cannabis, granulated, powdered, etc. = 1 gm of marihuana
> 1 gm of Hashish Oil = 50 gm of marihuana
> 1 gm of Cannabis Resin or Hashish = 5 gm of marihuana
> 1 gm of Tetrahydrocannabinol, Organic = 167 gm of marihuana
> 1 gm of Tetrahydrocannabinol, Synthetic = 167 gm of marihuana

Application Note 8 (D) to U.S.S.G. § 2d1.1.

In declining to rehear this case en banc, a majority of this court abandons its duty to review a question of exceptional importance: what equivalency ratio applies to a substance when the Government's lab report simply states that it contains "detectable amounts of THC," considering that each of the five controlled substances listed in Schedule I naturally contains detectable amounts of THC. The panel gave no meaningful answer to this *res nova* question but affirmed the district court's application of the highest ratio, applicable to THC, organic or synthetic, to what the record clearly establishes was marihuana and hashish. In so doing, the panel erased the distinctions between the five cannabis-derived substances in the Sentencing Guidelines and handed district courts unfettered discretion to increase the total amount of marihuana attributable to a defendant by a factor of 167. Because the en banc court has refused to correct the panel's consequential error, I must respectfully dissent.

1

I

Le'Ann Koss had the regular practice of making marihuana "edibles" by mixing small amounts of marihuana into butter, which she would eat on toast at night with her tea. After police uncovered an interstate drug conspiracy in which her husband and sons were major participants, Koss was arrested and pleaded guilty to conspiracy to possess with intent to distribute and possession with intent to distribute marihuana. The police investigation recovered 1.393 kilograms of marihuana from the Kosses' home in Texas, 1.612 kilograms of marihuana from Koss's sons and coconspirators in California, and 45.36 kilograms of marihuana from coconspirator Brian Smith, as well as 7.03 grams of a "brown chunky substance" and 5.42 kilograms of "moldy, foul smelling green substance," in both of which a Texas Department of Public Safety (DPS) laboratory analysis detected tetrahydrocannabinol. Koss identified the brown substance as hashish and the green substance as marihuana butter, which she said she made by mixing five to seven grams of marihuana into a pound of butter. Prior to sentencing, the federal probation officer calculated Koss's base offense level using the Drug Equivalency Table at Application Note 8 (D) to U.S.S.G. § 2d1.1.[1]

In the presentence report (PSR), the probation officer used the Drug Equivalency Table to convert the green and brown substances to their "marihuana equivalent." Relying on the DPS laboratory analysis that had detected tetrahydrocannabinol in both substances, the probation officer

---

[1] As explained above, under "Schedule I Marihuana," the Drug Equivalency Table lists five controlled substances and their marihuana equivalencies:

> 1 gm of Marihuana/Cannabis, granulated, powdered, etc. = 1 gm of marihuana
> 1 gm of Hashish Oil = 50 gm of marihuana
> 1 gm of Cannabis Resin or Hashish = 5 gm of marihuana
> 1 gm of Tetrahydrocannabinol, Organic = 167 gm of marihuana
> 1 gm of Tetrahydrocannabinol, Synthetic = 167 gm of marihuana

Application Note 8 (D) to U.S.S.G. § 2d1.1.

2

classified both as THC and applied an equivalency ratio of 1:167. As a result, the PSR stated that the 5.427 kilograms of brown and green substances were equivalent to 906.31 kilograms of marihuana. The total drug quantity thus attributable to Koss for sentencing purposes was 954.679 kilograms, and her base offense level was 30. The offense level was reduced by three levels to 27 for acceptance of responsibility, and the probation officer calculated the advisory Guidelines range to be 70 to 87 months of imprisonment for each count. The district court sentenced Koss at the threshold of the advisory range to 70 months on each count, to run concurrently. Had the green and brown substances been classified as marihuana and hashish, respectively, Koss's base offense level would have been 18; after the three-level reduction for acceptance of responsibility, Koss's offense level would have been 15, and the applicable Guidelines range would have been 18 to 24 months for each count.

The important *res nova* issue presented by this case is whether a substance containing marihuana can be classified not as marihuana but as THC under the Drug Equivalency Table and thus subjected to a 1:167 equivalency ratio. The panel held that "the plain language of the Guidelines states that mixtures or substances containing a detectable amount of THC are properly calculated using the 1:167 gram ratio" and thus that "the district court properly interpreted and applied the Guidelines, including its adoption of the PSR's use of the 1:167 gram ratio in Application Note 8 (D) to U.S.S.G. § 2D1.1 to calculate the marihuana equivalency of the marihuana butter and the brown chunky substance as substances containing THC." *United States v. Koss*, 812 F.3d 460, 471 (5th Cir. 2016). However, a mere finding that a substance contains a detectable amount of THC is plainly insufficient to demonstrate that it is organic or synthetic tetrahydrocannabinol for purposes of the Guidelines and the 1:167 gram equivalency ratio. All cannabis-derived

3

substances contain THC. If such a finding were sufficient to support a 1:167 enhancement, a district court could sentence a defendant convicted of possession of 1 gram of a marihuana as though she had possessed 167 grams of marihuana, merely on the basis of test results indicating that the "substance" contained THC.

The uncontested record evidence in this case indicates that the green substance was in fact marihuana mixed into butter: the amended factual basis refers to the marihuana, hashish, and marihuana butter found in Koss's garage as "approximately fifteen pounds of marihuana"; the PSR summarizes Koss's description of how she made the butter and notes that Koss "admitted she made the butter with marihuana"; and at sentencing the Government stated, "We only have this defendant's word as to what the ratios [of butter to marihuana] were and as to where the marihuana was obtained from." No record evidence undermines Koss's assertion that the marihuana butter was exactly that: butter mixed with marihuana. The Guidelines must be read to require the Government—before the 1:167 gram ratio may be applied—to demonstrate that the THC contained in the mixture is pure, isolated organic or synthetic THC, not THC that is naturally present in another controlled substance that was mixed into a carrier medium. *See Ramos*, 814 F.3d 910, 920 (8th Cir. 2016) (application of 1:167 ratio was appropriate because controlled substance in mixture was analogous to "pure THC," not to marihuana). Because the Government failed to make that demonstration in this case, the sentence imposed by the district court should have been vacated as unreasonable. And because the panel opinion not only fails to correct the district court's error but endorses that court's erroneous interpretation of the Guidelines, the en banc court should have granted rehearing in order to correct the panel's error.

4

## II

Affirming the district court's judgment, the panel opinion dismisses Koss's challenge to the district court's interpretation and application of the Guidelines, rejects her challenge to the sufficiency of the evidence supporting the district court's determination that the marihuana butter and the hashish were THC for purposes of the 1:167 gram ratio, and rebuffs her argument that the Drug Equivalency Table is ambiguous and that the rule of lenity should therefore apply. In doing so, the panel opinion commits several errors of its own: it repeatedly and willfully ignores the fact that neither the Guidelines nor the relevant federal statutes provide a definition of THC that can distinguish a substance containing "organic or synthetic THC" from a substance, like marihuana, that naturally contains the psychoactive chemical; misapplies the Guidelines' instructions for evaluating mixtures; and turns a blind eye to the far-reaching consequences of its opinion. I evaluate each of the panel opinion's conclusions, and its attendant errors, in turn.

### A

Challenging the procedural reasonableness of her sentence, Koss first asserted that the district court erred in its interpretation of the Guidelines. Specifically, she argued that, because "neither the statutes nor the Sentencing Guidelines provide any qualifying definition for THC (synthetic or organic) or any direction on how to apply its ratio provisions . . . there is no legal basis from which the Sentencing Court could make a determination to apply the 1:167 equivalency ratio instead of the 1:1 ratio." In the alternative, she argued that "the 1:167 ratio was incorrectly applied because the preponderance of the evidence does not support its application." The panel opinion erroneously dismissed both arguments.

5

Considering Koss's challenges to the district court's interpretation of the Guidelines, the panel opinion concludes that each "begins with one of two non-starters, to wit, either the notion that federal statutes *and* the Sentencing Guidelines are silent and provide no legal definition of THC or the notion that the Guidelines fail to provide adequate guidance on how to calculate the marihuana equivalency of mixtures or substances containing detectable amounts of THC." *Koss*, 812 F.3d at 467.

THC is a psychoactive ingredient that causes a euphoric state by binding to cannabinoid receptors in the brain. The MERCK Manual of Diagnosis and Therapy 1525-26 (Robert S. Porter et al. eds., 19th ed. 2011). It is the active chemical in marihuana and hashish, and can be extracted from cannabis plants or synthesized, as in the case of the FDA-approved drug dronabinol. Thus, THC is not only a Schedule I controlled substance; it is also the psychoactive ingredient in a number of Schedule I controlled substances under the Guidelines. *See Ramos*, 814 F.3d at 920-24 (Bright, J., concurring in part and dissenting in part).

The panel opinion claims that DEA regulations "defin[e] the term THC in detail" and therefore "a legal definition was available to guide the district court's determination as to whether the marihuana butter and the brown chunky substance were in fact 'substances containing THC' for purposes of the Guidelines." *Koss*, 812 F.3d at 475. The relevant regulation, 21 CFR § 1308.11(d)(31), "Schedule I," provides an imprecise definition of "Tetrahydrocannabinols" as:

> [T]etrahydrocannabinols naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and

pharmacological activity to those substances contained in the plant . . . .

While this definition could be used to determine whether the substances were "substances containing THC," it is not a qualifying definition that could be used to determine whether the substances were substances containing organic or synthetic tetrahydrocannabinols for purposes of the Guidelines. As Koss accurately emphasized on appeal, all five of the substances listed under "Schedule I Marihuana" in Application Note 8 (D) to U.S.S.G. § 2D1.1 contain some form of THC. For the equivalency table to make sense, "Tetrahydrocannabinol, Organic" and "Tetrahydrocannabinol, Synthetic" must be distinct from the THC that is naturally contained in cannabis and cannabis derivatives. If not, district courts could apply the cited definition and be led to conclude that the first substance listed in the equivalency table—marihuana itself—is a "substance containing THC" and sentence a defendant as if he possessed or distributed 167 times the number of grams involved in his case. Indeed, such an untoward result appears to have been reached with respect to the "brown chunky substance" found in Koss's garage. At sentencing, Koss's counsel conceded that the substance contained THC but asserted, without objection from the Government, that "everyone would agree" that the substance was in fact hashish; nothing in the record suggests that the hashish was mixed with anything else. Nevertheless, the 1:167 ratio, rather than the 1:5 ratio for hashish, was applied by the district court.

Furthermore, the panel opinion's insistence on referring to a "substance containing THC" is misleading, as it ignores the fact that the Sentencing Guidelines' Drug Equivalency Table provides a marihuana equivalency specifically for the controlled substances "Tetrahydrocannabinol, Organic" and "Tetrahydrocannabinol, Synthetic." The panel opinion asserts that the Drug Equivalency Table for Schedule I Marihuana "provides that one gram of a

7

mixture or substance containing a detectable amount of organic or synthetic THC is the equivalent of 167 grams of marihuana." *Koss*, 812 F.3d at 464. This assertion is simply wrong. The Drug Equivalency Table provides that one gram *of organic or synthetic tetrahydrocannabinol* is the equivalent of 167 grams of marihuana, not that any substance in which THC is detected is the equivalent of 167 grams of marihuana. Application Note 8 (D) to U.S.S.G. § 2D1.1.

The Guidelines Manual does provide that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 Note (A) to Drug Quantity Table (U.S. SENTENCING COMM'N 2015). But this is a secondary step. Before using the Drug Equivalency Table, one must determine the identity of "the controlled substance involved in the offense." Application Note 8 (A)(i) to U.S.S.G. § 2D1.1. In the case of a substances listed under "Schedule I Marihuana," a showing that the substance contains a detectable amount of THC, on its own, is plainly insufficient to make this preliminary determination; as noted, every substance in the table contains THC. The weight of a mixture containing THC can be considered only after one has confirmed that the carrier medium was mixed with pure, isolated THC. *See Ramos*, 814 F.3d at 920 (application of the 1:167 ratio was appropriate because controlled substance in mixture was analogous to "pure THC," not to marihuana). To ignore this step is to further elide the distinction between pure, isolated THC and any substance that contains THC—including marihuana.

As to the second "non-starter," the panel opinion asserts that the Guidelines contain "careful directions for how to calculate the marihuana

8

equivalency of substances—like the marihuana butter and the brown chunky substance at issue—that contain detectable amounts of THC." *Koss*, 812 F.3d at 467. Again, this assertion misses the mark: the Guidelines provide directions for how to calculate equivalencies of particular substances, but, as I have discussed, they do not provide directions for how to determine what the substance is in the first place and therefore which equivalency applies. And contrary to the panel opinion's assertion, the fact that § 2D1.1 and its commentary provide that the weight of a controlled substance refers to the entire weight of any mixture containing a detectable amount of the controlled substance does not solve this problem. Koss did not contest that the relevant weight is that of the entire substance, including the carrier medium. Instead, she argued that when the district court considered the entire weight of the marihuana-butter mixture it should have treated it all *as marihuana*, not as pure, isolated THC. The panel fails to recognize that any mixture containing marihuana is, necessarily, a mixture containing some form of THC, and that the Guidelines do not direct the district court to treat such a substance as pure, isolated THC rather than as marihuana, hashish, or hashish oil.

The Guidelines do not provide directions for how to distinguish a substance that is or contains organic or synthetic tetrahydrocannabinols from a substance that is or contains marihuana, hashish oil, or hashish. A natural reading of the Guidelines would require the Government to prove that a substance is, or contains, *pure, isolated* organic or synthetic THC before the district court could apply the 1:167 ratio. The plain-meaning rule supports such an interpretation: the equivalency table consists of five distinct controlled substances, all of which *contain* THC, but only two of which *are* THC. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring) ("The starting point in every case involving construction of a

9

statute is the language itself."). This interpretation is also consistent with the general principle that "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). It is also consistent with the logic of the equivalency table, in which "the marihuana equivalency ratio . . . increases as the amount of plant material decreases" and the concentration and potency of the psychoactive chemical increases. *Ramos*, 814 F.3d at 921 (Bright, J., dissenting).

The reading of the Drug Equivalency Table employed by the district court and by the panel treats any substance that contains THC—including marihuana and hashish—as pure, isolated THC, thereby erasing the distinctions between the five categories in Application Note 8 (D). Such a reading is contrary to the plain meaning of the Guidelines, ignores the rule that statutory terms must be read in context, and violates the rule against surplusage, rendering the entire equivalency table redundant. *See* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision [of an enactment] is to be given effect. . . . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). Because every substance in the table contains THC, the panel's reading would allow a district court to subject every substance to either the specified ratio (1:1 for marihuana, 1:5 for hashish, etc.) or to the 1:167 ratio for organic or synthetic THC. I agree with Koss that, under such a reading, "there is no legal basis from which the Sentencing Court could make a determination to apply the 1:167 equivalency ratio instead of the 1:1 ratio." Consequently, the district court and the panel erred in their interpretation and application of the Guidelines.

10

With respect to Koss's challenge to the sufficiency of the evidence, the panel opinion "conclude[s] that the district court's determination that the marihuana butter and the brown chunky substance were substances containing detectable amounts of THC for purposes of the 1:167 gram ratio was not clearly erroneous in light of the available sentencing evidence." *Koss*, 812 F.3d at 479. The panel opinion states that the DPS lab reports indicated that the substances did contain THC and that "Koss bore the burden 'to demonstrate by competent rebuttal evidence that the information [was] materially untrue, inaccurate or unreliable.'" *Id.* at 470 (citing *United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015)). Again, this misses the point entirely: Koss's contention was not that the lab reports were inaccurate, but rather that they were insufficient to support the PSR's conclusion that the substances were organic or synthetic THC for purposes of the Guidelines. DPS testing confirmed that "both substances contained detectable amounts of THC." However, these results—that some unspecified form of THC was detected—could have been obtained from a sample of pure THC, from a sample of pure marihuana, or from a sample of any marihuana derivative. The testing did not establish that either substance contained THC from an origin other than marihuana, in the case of the green substance,[2] or hashish, in the case of the brown one.

---

[2] In a footnote, the panel majority seems to suggest that the application of the 1:167 ratio would have been inappropriate if Koss had proven at sentencing that the green substance in fact contained marihuana. *Koss*, 812 F.3d at 470 n.6. If the issue were that Koss did not rebut evidence demonstrating that pure, isolated THC, rather than marihuana, was mixed into the butter, I accept that this would be a much closer case. However, the panel acknowledges that "[n]either party disputes that the moldy, foul smelling green substance was, as Koss described in her presentence interview, a homemade marihuana-infused butter," *Id.* at 464 n.1, and the record contains ample evidence that the substance contained marihuana that Koss mixed into butter as a home remedy, *see supra*. The contention that Koss failed to carry her burden is therefore meritless.

Furthermore, and contrary to the panel opinion's assertions, the record indicated that the green substance was, in fact, butter mixed with marihuana and not a mixture of a carrier medium and pure, isolated THC. The amended factual basis refers to the marihuana, hashish, and marihuana butter found in Koss's garage as "approximately fifteen pounds of marihuana." The PSR in no way contests Koss's characterization of the green substance as butter mixed with marihuana. For example, the PSR summarizes Koss's description of the butter: "According to the defendant, there was between five to seven grams of marihuana per pound of butter. The defendant then stated she purchased two pounds of low grade marihuana from someone in east Waco. Koss reported she started making butter with the marihuana mixed in." In addition, under the heading "Acceptance of Responsibility," the PSR states that Koss "admitted she made the butter with marihuana." And at sentencing the Government apparently conceded that the substance was marihuana butter, stating: "We only have this defendant's word as to what the ratios [of butter to marihuana] were and as to where the marihuana was obtained from."

The panel opinion concludes that the district court's determination was not clearly erroneous because it relied on the information in the PSR, including the lab reports, and states:

> The DPS lab reports indicated that the marijuana butter was in fact a substance containing a detectable amount of THC, and Koss put on no evidence at sentencing tending to suggest that the reports' results were inaccurate or that the DPS lab practices failed to test the marijuana butter in a manner that was consistent with the Guidelines.

*Id.* at 471. Once again, the panel opinion fails to grasp the real issue. "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quotations and citations

12

omitted). A district court can therefore "adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability." *Id.* (alteration in original). Here, the *presence* of THC in the substances was a factual finding that could be adopted by the district court; however, the PSR did not find that the green and brown substances contained pure, isolated organic or synthetic THC; nor did it report that they were not marihuana butter and hashish, respectively. And to the extent the PSR suggested that the substances were pure, isolated THC, given the overwhelming evidence to the contrary, it was error for the district court to rely on this suggestion. *See United States v. Zuniga*, 720 F.3d 587, 590-91 (5th Cir. 2013) ("If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence.") (quoting *United States v. Harris*, 702 F.3d 226, 231 (5th Cir. 2012)).

A factual finding is clearly erroneous if it is not plausible in light of the record as a whole. *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). The DPS lab reports stated only that THC was detected in the substances and thus that both were subject to the Drug Equivalency Table for "Schedule I Marihuana" set forth in Application Note 8 (D) to U.S.S.G. § 2D1.1. The remainder of the record unequivocally indicates that the green substance was a mixture of marihuana and butter, and thus demonstrates that the "1 gm of Marihuana/Cannabis, granulated, powdered, etc. = 1 gm of marihuana" equivalency should have applied to it. And the record contains no evidence that the brown substance was not, as counsel asserted, hashish, and thus the "1 gm of Cannabis Resin or Hashish = 5 gm of marihuana" equivalency should have applied to it. In light of this, the district court's determination that the 1:167 ratio for THC was instead applicable is implausible and thus clearly

13

erroneous, *Betancourt*, 422 F.3d at 246, and the panel opinion was wrong to affirm it.

B

Finally, Koss argued that the district court erred by applying the 1:167 gram marihuana equivalency ratio for organic or synthetic THC instead of the 1:1 gram marihuana equivalency ratio for granulated or powdered marihuana because the Guidelines are ambiguous and thus require the application of the rule of lenity. She first asserted that neither federal statutes nor the Sentencing Guidelines provide a definition of THC and that this lack of a qualifying definition creates an ambiguity that should be resolved in her favor. More generally, she argued that it is at least ambiguous whether the Sentencing Commission intended to limit use of the 1:167 gram ratio to mixtures or substances with a high purity or concentration of THC.

"The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute." *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir.2001) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)) (alteration in original). "Although the provisions of the Sentencing Guidelines are not statutes, we apply the rule of lenity to them when we find that they are ambiguous." *United States v. Bustillos-Pena*, 612 F.3d 863, 868 (5th Cir. 2010). As I have explained, the Guidelines are not necessarily ambiguous. Rather, by employing traditional canons of statutory construction—the plain-meaning rule, the general rule that terms in a statute must be read in context, and the rule against surplusage—they can and should be read to require applying the 1:167 gram ratio only to pure, isolated THC or substances that contain pure, isolated THC, not to substances that contain THC only because they contain—or are—marihuana or hashish. By allowing the panel decision to stand, however, the

14

en banc court makes the equivalency table ambiguous: accepting the panel's assertion that "tetrahydrocannabinols" does not necessarily mean pure, isolated THC, it is not clear when a substance is or contains "marihuana" or "hashish" and when it is or contains "THC." Because of that erroneous injection of ambiguity into the table, I would therefore agree with Koss that in this alternative the rule of lenity should have applied in her case.

The panel opinion rejects Koss's argument based on the lack of a qualifying definition of tetrahydrocannabinols "in light of the statutory definition of THC at 21 C.F.R. §1308.11(d)(31)." *Koss*, 812 F.3d at 471. However, as discussed above, that imprecise definition does not correct the ambiguity in the equivalency table: any of the five substances listed could be a "substance containing THC" as that substance is defined in the DEA regulations. In fact, the ambiguity is inherent in the regulatory definition, which refers to "tetrahydrocannabinols naturally contained in a plant of the genus Cannabis," 21 CFR § 1308(d)(31), and thus confirms that marihuana itself is a "substance containing THC." Because the definition of THC in the DEA regulations does not clearly tell a sentencing court whether to apply the 1:1 or the 1:167 equivalency to a substance containing marihuana, it does not cure the ambiguity injected into the Drug Equivalency Table by the panel opinion and the rule of lenity should compel the application of the more lenient ratio. *Bustillos-Pena*, 612 F.3d at 868.

With respect to Koss's second argument, the panel observes that "[t]he Sentencing Commission could . . . reasonably intend to punish those who combine THC—irrespective of its origin, *i.e.*, organic THC stripped from marihuana, or synthetic THC created in laboratory-like circumstances—with carrier mediums to make large quantities of marihuana-containing products harshly without requiring an inquiry into the purity of THC in the resulting

15

product." *Koss*, 812 F.3d at 474. I agree that this is a reasonable interpretation based on current and future technology that permits the manufacture of synthetic THC and the derivation of pure THC from cannabis plants. However, the panel ignores the fact that this is a strong argument for not reading the Guidelines as the panel does and for not applying the 1:167 ratio to a defendant, such as Koss, who unquestionably has not combined pure, isolated THC with other substances, but rather has combined *marihuana* with a carrier medium. The Guidelines already contemplate harsher punishment for those who combine a controlled substance with a carrier medium: the weight of the entire mixture is used for sentencing. It is unreasonable to allow—and even more so to expressly direct—district courts to further enhance a defendant's punishment by applying a 1:167 gram ratio enhancement merely because the resulting mixture necessarily contains a detectable amount of THC.

## III

In affirming the judgment of the district court, the panel adopts an untenable interpretation of the Sentencing Guidelines' Drug Equivalency Table; embraces the insupportable determination that the 1:167 ratio for pure, isolated THC was applicable to substances containing marihuana or hashish; and, alternatively, violates the rule of lenity. The panel's erroneous interpretation of the equivalency table empowers district courts to apply the 1:167 ratio to any substance listed in the table at will—not just in cases where pure, isolated THC is at issue. And perversely, it will have the effect of punishing defendants convicted for possession of homemade marihuana edibles significantly more harshly than defendants convicted for possession of an equivalent weight of pure marihuana. This unjust result could not have been intended by Congress or the Sentencing Commission.

16

The panel's holding could have a devastating effect on the sentences of an untold number of drug offenders. Even more concerning is the fact that this disastrous result will befall certain offenders arbitrarily, as the panel opinion provides no coherent principle for determining marijuana equivalency of any substance containing THC. Given the substantial proportion of drug-offense cases in the dockets of the courts in our circuit, this case plainly warrants the attention of our full court. In the words of Federal Rule of Appellate Procedure 35(a)(2), this case raises a question of "exceptional importance" and plainly warrants the attention of our full court. The courts in our circuit hear a substantial number of drug-offense cases, and this court's failure to address that *res nova* question leaves the lower courts to operate without any guidance in meting out sentences for many drug offenders. I therefore respectfully dissent from the refusal to rehear this case en banc.